**Darby SUITER, Appellant,**

v.

**Kegham S. GREGORY et al., Appellees.**

No. 12852.

Court of Civil Appeals of Texas.

Galveston.

May 26, 1955.

Rehearing Denied June 16, 1955.

910

Gerald S. Gordon, Houston, for appellant.

McGregor & Sewell, Ben G. Sewell and Jerry M. Hamovit, Houston, for appellee Kegham S. Gregory.

No Brief filed for appellee Stewart Title Guaranty Co.

HAMBLEN, Chief Justice.

This suit involves the opposing contentions of appellant and appellee that each is entitled to be paid the sum of $500.00 which had been deposited with Stewart Title Guaranty Company as earnest money. The facts material to the determination of their respective contentions are not in dispute and are substantially as follows:

On June 17, 1954, appellant, as seller, and appellee Gregory as purchaser entered into a contract in writing under the terms of which appellant agreed to sell and said appellee agreed to purchase real property in Harris County, described as Lot 7, in Block 3 of Lucille Place, an addition in Harris County, Texas, according to map thereof recorded in Vol. 21, page 8 of the map records of Harris County, Texas. Under the terms of such contract, appellee Gregory deposited with Stewart Title Guaranty Company the sum of $500 as earnest money. The conditions upon which such deposit was made, and was to be held by Stewart Title Guaranty Company, are set forth in the contract as follows: "Title to above property to be guaranteed to purchaser at purchaser's expense by the Stewart Title Guaranty Company. If said Stewart Title Guaranty Company refuses or is unable to guarantee said title to purchaser for whatsoever reason, the seller shall have thirty days from date Stewart Title Guaranty Company notifies seller of its refusal, to cure said title to the satisfaction of the Stewart Title Guaranty Company, and, if at the end of said time, the said Stewart Title Guaranty Company still refuses to guarantee said title for whatsoever reason, then, and in that event, the earnest money herein receipted for, shall be returned to purchaser upon the cancellation and return of this contract, or purchaser may enforce specific performance of same. If said Stewart Title Guaranty Company is ready and willing to guarantee said title to purchaser, and purchaser fails, refuses, or is unable for whatsoever reason to consummate this contract

in accordance with the terms hereof, and within thirty days from the date of this contract, then the earnest money herein receipted for shall be forfeited to seller and agent equally, as agreed liquidated damages, or seller may enforce specific performance of this contract."

On July 29, 1954, Stewart Title Guaranty Company caused to be delivered to the parties to the aforementioned contract an instrument which it designated as "Owner's Title Policy Commitment." Since the terms of that instrument are material to the determination of this appeal, a copy thereof is attached as Exhibit "A" to this opinion.

Under date of July 28, 1954, appellee Gregory notified appellant and Stewart Title Guaranty Company that he was unwilling to purchase the property described in the contract referred to. Such notice was in the form of a letter addressed to Stewart Title Guaranty Company by his attorneys, as follows:

"We understand that you hold as Escrowee under the terms of a certain purchase agreement dated July 17, 1954, between Kegham S. Gregory and Darby Suiter the sum of Five Hundred and no/100 ($500.00) Dollars. As attorneys for Mr. Gregory, we are authorized to inform you that he does not desire to consummate the contract, and you are authorized to release to Mr. Suiter said sum now held by you in escrow as earnest money, provided your company would be ready and willing to guarantee title in accordance with the purchase contract. Accordingly, if the escrow fund is released, please let us have for Mr. Gregory's records a letter to the effect that you would be ready and willing to guarantee the title to the purchaser without any qualification or restriction whatsoever. We could not consider the escrow subject to forfeiture if your title guaranty commitment was qualified to any extent."

On July 29, 1954, appellee Gregory, through his attorneys, addressed a second letter to Stewart Title Guaranty Company, the material portion of which is as follows: "Since it appears that you cannot furnish the type of title guaranty provided for in the Contract of Sale or the assurances requested in our letter of July 28, 1954, we respectfully request that you return to Mr. Gregory, in care of this office, the Five Hundred ($500.00) Dollars now held by you in escrow."

Suit was instituted by appellant on September 10, 1954, against appellee Gregory and Stewart Title Guaranty Company, seeking judgment for the sum of $500. Gregory answered by general denial, and filed a cross-action against Stewart Title Guaranty Company seeking judgment for the sum of $500. Stewart Title Guaranty Company filed an interpleader in response to both actions, and asked for attorneys' fees in the sum of $100. Appellant and Gregory filed motions for summary judgment under the provisions of Rule 166–A, TRCP. Prior to the hearing, the facts which have been stated were established by Requests for Admissions under the provisions of Rule 169. At the hearing of said motions before the County Court at Law of Harris County, the motion of appellee Gregory was granted, and judgment entered in favor of said appellee for the sum of $500. Stewart Title Guaranty Company was allowed an attorney's fee of $50.00. Thereafter, despite the fact that the judgment had been entered under the provisions of Rule 166–A, Texas Rules of Civil Procedure, the trial court, in response to appellant's request, filed findings of fact and conclusions of law. Since the facts were completely undisputed, the purpose of the request is not readily discernible.

■ As we see it, the sole question presented is whether or not the basis upon which Stewart Title Guaranty Company was willing to guarantee title to Gregory as evidenced by Exhibit "A" met the conditions of the contract of sale between appellant and said appellee. We think it is readily apparent that it did not. From paragraph numbered 6 of the exhibit, it will be seen that from the proffered guarantee would be excluded all matters of area, boundary, lines, conflicts, adverse possession, rights of

912

parties in possession and those under whom they claim, and location of improvements. Paragraph 7 excludes all bills and claims for work performed and material furnished on the premises. Paragraph 10 excludes anything that may be filed or done subsequent to July 14, 1954, which date, it is noted, is three days prior to the date of the contract of sale. With reference to the stated exclusions from the guarantee, the contract contained no qualification or agreement whatsoever. This we think adequately answers appellant's point one wherein he contends that the proffered guaranty complies with the terms of the contract of sale.

■ By point two appellant asserts: "The trial court erred in holding that the rejection of the proffered Owner's Title Commitment by the Appellee on the basis of a recorded easement was not good cause to reject and was a breach of the contract waiving further action on part of the Appellant or Stewart Title Guaranty Company." We find no express holding by the court to the effect complained of, and are not certain that we understand the rationale of the point. If by it appellant means that the contract of sale either expressly or by implication qualified the title to be guaranteed in so far as the recorded easement is concerned, and that the exclusion from the proffered guarantee of the easement could not support Gregory's rejection thereof, then we point out the many other proposed exclusions which we have heretofore mentioned. Therefore, if the trial court did so hold, and if, as appellant asserts, such holding was erroneous, the judgment must nevertheless be sustained for the reasons stated.

■ By point three appellant complains of the allowance of attorneys' fees to Stewart Title Guaranty Company. The argument is that such Company was the agent of appellee Gregory. The factual basis for the argument is the recitation in the contract that appellee was to pay the expense of the guarantee of title. We overrule the point. We know of no rule which provides that a stakeholder becomes the agent of one of two contracting parties because they contract between themselves as to which is to pay the expenses involved.

■ Throughout his argument, appellant makes the contention that Stewart Title Guaranty Company is limited in the form of guarantee of title which it may issue under the provisions of Article 9.03, Chapter 9, Insurance Code of Texas, V.A.T.S. and that appellee Gregory and appellant must be presumed to have contracted with reference to such limitations. We are not aware of what specific limitations the Board of Insurance Commissioners may have placed upon the guarantees of title which may be written by title insurance companies, and appellant has not informed this Court.

Article 9.03 has reference only to form and not to content of policies of title insurance. While we are confident that the form of policy employed by this particular company complies with every requirement of the Board, we are equally confident that the Board does not require the guarantee to be limited to a period ending prior to the date of contract for the sale and purchase of property.

Judgment affirmed.

Exhibit "A"

Owner's Title Policy Commitment

29th day of July, 1954
G.F. #143904/54102
Expires Thirty Days From Date
TO: K. S. Gregory
Dear Sir:

In connection with an order placed with us for an Owner's Title Policy, we commit ourselves to issue to you, subject to all of the matters hereinafter set forth, our usual Owner's Title Policy on the following described property in Harris County, Texas:

Lot 7, Block 3, Lucille Place, an addition in Harris County, Texas, according to the Plat thereof recorded in Volume 21, page 8, Map Records of Harris County, Texas, said policy to contain the exceptions set forth in Section 1 below and to be issued subject to matters hereinafter set forth, any

liens created in connection with the closing of this transaction, any liens hereinafter mentioned which are not released, payment of all taxes, and any other requirements hereinafter set forth which have not been fully complied with and satisfied.

### Requirements

Ownership:

1. That we be furnished with properly drawn, executed, acknowledged and delivered General Warranty Deed from Darby Suiter, a single man, conveying the above described property to our assured.

Liens:

2a. Deed of Trust dated June 7, 1946, recorded in Volume 1202, Page 493, Mortgage Records, from William H. Gibson, and wife, Helen Gibson, to R. D. Walton, Trustee, covering the above described property, securing payment of note of even date in the amount of $9,668.00, payable. to American General Investment Corporation as therein stated; and assigned to Teachers Insurance Company & Annuity Association of America by instrument recorded in Volume 1193, Page 666, Mortgage Records.

Easements:

3. Six Foor easement across the rear of said property, as reflected by the Plat recorded in Volume 21, Page 8, Map Records.

Leases and/or Mineral Reservations:

4.

Taxes:

5. This commitment is issued subject to taxes for the current and prior years.

Possession, Area and Boundaries:

6. No investigation as to matters of area, boundary, lines, conflicts, adverse possession, rights of parties in possession and those under whom they claim, location of improvements or homestead rights has been made and this commitment is issued subject to said matters. If the party in possession is a former owner and has been foreclosed, no policy will be issued until the property is vacated or other arrangements satisfactory to the company are made.

7. This commitment is subject to proof of payment of all bills and claims for work performed and material furnished in the above described premises.

Miscellaneous:

8a

Fees and Duration of Commitment:

9. The undersigned must receive payment of the premium prescribed for this policy by the Board of Insurance Commissioners, and this commitment shall become null and void upon the issuance of said policy or thirty (30) days from the date hereof, whichever is earlier.

Matters Subsequent to Commitment:

10. This commitment is issued subject to anything that may be filed or done subsequent to the 14th day of July, 1954, at 8:00 a. m., that may, in the opinion of our attorneys, adversely affect the title to be insured.

Payment, Proration And Closing Requirements:

11. This commitment is subject to the full purchase price for the property being paid, proration made and the Company's usual closing requirements being met.

Restrictions:

Restrictions, covenants, and conditions imposed thereon by the Plat recorded in Volume 21, page 8, Map Records.

Section 1

1. All restrictive convenants affecting the above described property.

2. Any discrepancies, conflicts, or shortages in the area or boundary lines, or any encroachments or any overlapping of improvements which a correct survey would show.

3. Taxes for the current year.

4. Rights of parties in possession.

Stewart Title Guaranty Company
by: Murray Cameron

MC:MT-4