Cecil H. CRESON, Jr., Appellant,

v.

H. Merlyn CHRISTIE et al., Appellees.

No. 6249.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 15, 1959.

Rehearing Denied Nov. 12, 1959.

Bernard Kay, Wm. M. Nathan, Houston, for appellant.

Vinson, Elkins, Weems & Seals, Houston, for appellees.

### ANDERSON, Chief Justice.

The appeal is from a judgment in favor of the defendants in a suit for specific performance of a contract to convey land and for damages. It presents, in reality, but one question: that of whether the trial court erred in rendering the judgment it did and in failing to decree specific performance of the contract. The only other matters complained of are two incidental conclusions of law recorded by the trial judge when requested by appellant to file findings of fact and conclusions of law. The findings of fact are not themselves attacked. Trial, as would be supposed, was to the court, without a jury.

Since the findings of fact are not here attacked, they will be accepted at face value. Being lengthy, they will not be copied into the opinion, but will be used as the basis of facts stated.

Under date of August 6, 1957, appellees, H. Merlyn Christie, George P. Mitchell, Johnny Mitchell, and Raymond C. Loomis, each of whom owned an undivided one-fourth interest in the land that is involved, contracted in writing with Larry Robinson to convey to Robinson or "his nominee" a tract of land in Montgomery County consisting of 550.18 acres, more or less. Conveyance was to be made subject to specified incumbrances, and the sellers were to re-serve certain mineral or royalty interests, but those provisions of the contract are not material to the suit. Conveyance was also to be made by "special warranty deed"; that is, by a deed in which the grantors would warrant title only against the claims of persons claiming by, through or under the grantors themselves. The purchase price was to be $82,500, $22,500 of which was to be paid in cash at the time of closing, and the balance of which was to be evidenced by four $15,000 notes, one payable to each seller. The notes were to be secured by both a vendor's lien and a deed of trust lien. The deed of trust, of course, was to be executed by the purchaser.

The contract consisted of two instruments, one of which was but a rider or addendum by which the contract as originally prepared was altered and supplemented. Both instruments were apparently executed as one transaction, and each was executed by appellees and Robinson and by one Walter Bohn, who signed as "agent". Appellant Creson, although a party at interest from the outset, did not become known to appellees as an interested party until November 19, 1957. On the previous day he had acquired all of Robinson's rights under the contract, and Loomis was so advised in a telephone conversation with Robinson on the 19th and in a letter he received from Robinson the next day. Bohn, although signing as "agent", had no interest in the transaction except as a real estate broker who was to receive from the sellers a five percent commission on the sale.

As originally drafted, the contract provided: "Seller shall forthwith furnish owners' title policy issued by Griffin Abstract Company, and shall furnish Tax Collector's certificate showing all taxes to have been paid, and shall deliver possession of said property, subject to the terms hereof, not later than date of closing." But that was one of the provisions that was altered by the rider or addendum. It was amended so as to provide that the title policy was to be issued by "an agent of Stewart Title Guaranty Company on Stewart Title Guar-

anty Company's form." The change was made at the instance of the purchaser, Robinson.

There followed in the original draft of the contract the provisions that constitute the basis of controversy, towit:

"Seller shall have thirty (30) days from the date hereof within which to have said Title Company investigate the title to said property. Said Title Company shall report in writing all defects or objections, if any, to Seller's title, and Seller shall have thirty (30) days thereafter within which to have the same cured or removed. If Seller is unable within said time to remove such defects or objections to the satisfaction of said Title Company, and said Title Company by reason of such defects or objections refuses to guarantee said title to Purchaser, then the earnest money herein receipted for shall be returned to Purchaser, and this contract shall thereupon terminate and all parties hereto shall be fully released herefrom, or purchaser may waive such defects and accept title as shown.

"If however said Title Company is ready and willing to guarantee said title to Purchaser, and Purchaser fails or refuses or is unable for any reason to consummate this contract in accordance with the terms hereof within a period of ten (10) days from notice that said Title Company is ready to guarantee said title, then the earnest money herein receipted for shall be forfeited to Seller and agent equally, as agreed liquidated damages, and this contract shall thereupon terminate and all parties shall thereupon be fully released therefrom, or Seller may enforce specific performance of this contract."

The "earnest money" to which reference was made, and which was put up by Robinson (the purchaser), was only $1,000. It and the contract were deposited in escrow with Stewart Title Guaranty Company on August 12, 1957, at the company's office in Houston.

The company thereupon considered itself as having been requested by Loomis and his co-sellers to issue an "owner's title policy" in which the ultimate purchaser of the land under the contract would be named as beneficiary. But it was not until more than 70 days had elapsed and the sellers, through Loomis, had already assumed the position that the contract was ended that the company agreed to guarantee title to the land. And even then it did not agree to guarantee the title if appellees conveyed the land by the means stipulated in the contract, i. e., by "special warranty deed," but only if they conveyed it by a deed containing a general warranty of title.

The qualified offer to insure was made not earlier than November 8, 1957, and possibly not earlier than November 14, 1957. In the meantime, there had been this sequence of events: On the day after the escrow deposit was made, or on August 13, 1957, Stewart Title Guaranty Company (hereafter referred to as Stewart) forwarded the application for title insurance to its representative or agent in Montgomery County, Griffin Abstract Company (hereafter referred to as Griffin). Griffin was to act on it in Stewart's behalf. The abstract of title was not forwarded at that time, but was supplied by Loomis to Stewart on August 13, and was forwarded by Stewart to Griffin on August 16, 1957. On September 14, 1957, Griffin's attorney wrote Stewart, stating that, while he felt that the title was reasonably safe, he was unwilling to recommend that Griffin issue a guaranty policy on it without Stewart's prior approval. He pointed out that, although appellees hold under deeds made prior to 1900 by persons who represented themselves to be heirs of the person to whom the land was patented in 1845, and under a judgment against the unknown heirs of the patentee, there was nothing of record from which it could be ascertained that they held under deeds from all of the heirs, and that, between 1934 and 1937, following discovery

of oil near Conroe, a great many powers of attorney from hundreds of persons scattered over the United States who claimed to be heirs of the patentee had been placed of record in the deed records of Montgomery County. A copy of the letter was sent to appellees' attorney, Joel B. Coolidge, but not to Robinson the purchaser. The latter did not see the letter or a copy of it until after suit had been filed. Stewart, through no fault of any of the contracting parties, delayed saying whether it would or would not insure the title. Though repeatedly urged by appellees to do so, it still had not declared itself when Loomis, for himself and his associates, informed it by letter dated October 23 that its failure to commit itself by 3:00 p. m. of October 24 would be construed as a refusal to insure. Copies of the letter were sent to Robinson and Bohn. Stewart did not reply, nor did Robinson communicate with Loomis. When ten days had elapsed after October 24 without his having heard from Robinson, Loomis wrote Robinson that by failing to commit itself within the time specified in the contract and in Loomis' letter of October 23 Stewart had, in effect, refused to guarantee the title, and that therefore the contract was "for all intents and purposes cancelled." The letter was dated November 4. Copies of it were sent to Bohn and to Coolidge, appellees' attorney. Robinson did not reply.

Except to the extent they did so by Loomis' letter of October 23, appellees did not countermand their order for title insurance, did not instruct either Stewart or Griffin to discontinue work on the title, did not instruct Stewart to release the "earnest money" to Robinson or his assignee. However, they were not aware until after November 8 that either Stewart or Griffin was still pursuing the matter after October 24; and in their pleadings they disclaimed any interest in the "earnest money."

On November 8, 1957, Griffin, at the instance of Bohn, who was acting of his own volition and without appellees' authorization or knowledge, purported to commit Stewart to insure the title if it passed under appellees' general warranty. The original and a copy of the commitment were delivered to Bohn, and a copy of it was mailed to Stewart. Bohn delivered the original to Robinson, in whose favor it was made, but not until November 13, Robinson having been out of town in the meantime. He delivered the copy to appellees' attorney on November 11.

Only the one commitment was ever issued, but on November 14 Stewart itself mailed Robinson the copy of it that had been supplied it by Griffin, representing in its letter of transmittal that it had found appellees' title clear. Robinson received the letter and copy of commitment on November 15.

Up until that time Robinson had not indicated to appellees that he was willing to accept the title or that he was willing and ready to conclude purchase under the contract. Nor did he himself do so later; but on November 19, as previously mentioned, he informed Loomis by telephone that appellant had acceded to the purchaser's rights under the contract. Loomis mentioned his letter of November 4, and informed Robinson that appellees considered the contract terminated. Robinson subsequently, but on the same day, wrote the letter Loomis received on November 20. The body of the letter was as follows:

"This will acknowledge my receipt on November 15th, 1957 of a letter from Stewart Title Guaranty Company wherein was contained its owner's Title Policy Commitment covering your certain 550.18 acres of land out of the Richard Vince Survey in Montgomery County, Texas.

"In accordance with the terms of our earnest money contract covering said property this will serve to notify you that I hereby assign all of my right, title and interest in said contract to Cecil H. Creson, Jr., as my nominee and that as such he stands ready willing and able to consummate said contract with you in accordance with all of

the terms thereof. Since said contract calls for closing within a period of ten days, Mr. Creson would appreciate your contacting him at 2010 Bank of the Southwest Building, Houston, Texas (Telephone CA–80481) as soon as possible in order to set up a mutually convenient appointment for closing."

Copies of the letter were sent to Creson and to Stewart.

Loomis did not reply to Robinson, but on November 21 he wrote Creson as follows, sending copies of the letter to both Robinson and Bohn:

"You are advised that the earnest money contract referred to by Mr. Larry H. Robinson in his letter to me dated November 19, 1957, has long since terminated and been cancelled."

The letter concluded the pre-suit communications between appellees and appellant, and left Robinson's letter of November 19 to Loomis as appellant's nearest approach to a pre-suit tender of performance of his part of the contract. Appellant, accompanied by Robinson and Bohn, did go to Stewart's escrow officer on November 22 and represent that he was ready to conclude purchase of the land, but the escrow officer had no deed, and appellees were not contacted.

Stewart, through its escrow officer, definitely informed appellant on November 22 that it would not insure the title if the land was conveyed otherwise than by general-warranty deed. Upon being asked if Stewart would insure the title if, having first accepted a special-warranty deed from appellees, appellant should himself convey the land by general-warranty deed, the escrow officer suggested that appellant take the matter up with Griffin's attorney in Conroe. Appellant, together with Robinson and Bohn, did so the following day. The record does not reflect what the attorney told them.

Without further preliminaries appellant filed suit on December 6, 1957, and an amended petition on March 21, 1958. He pleaded the contract, his constant ability and readiness to perform it following its execution, prior tender of performance, appellees' rejection thereof, and their refusal to perform. He also made tender by his pleadings. Of greater significance for present purposes, however, were certain allegations he made with reference to insurance, these having been taken into consideration by the trial judge in making one or more fact findings. Appearing in each petition, they were to the effect that appellees, if willing to do so, could supply the title insurance contemplated by the contract, even though they conveyed by special-warranty deed. Appellant indicated his willingness, if need be, to accept title without the insurance, but rather left it up to the court as to whether he should do so.

Stressing the equivocal nature of the pleadings and of Robinson's letter of November 19 to Loomis, and also appellant's and Robinson's continued interest in insurance after the letter was written, the trial judge found as a fact that neither Robinson nor appellant in good faith intended the letter of November 19 as an offer to waive the title insurance and accept title without it. He also found that while talking to Stewart's escrow officer on November 22 appellant did not in good faith offer to waive the insurance.

Appellant neither plead nor attempted to prove any other means by which he tendered performance before filing suit. In his original petition he only plead that he tendered performance on November 22, 1957. He omitted that allegation from his amended petition and alleged that he tendered performance on November 19, through Robinson's letter to Loomis.

Appellees answered by a qualified general denial and by special pleas. They alleged, among other things, that the contract never became binding upon them, having been the product of mutual mistake, the parties to it having been unaware at the time of contracting that Stewart would not

insure the title if conveyed by special-warranty deed. They also alleged that by the contract they only granted an option to purchase the land within not exceeding 70 days, and that the option expired when not exercised within that period of time. Additionally they represented that in any event the contract had expired under its own terms. In this connection they rather fully pleaded the facts as set out above and also additional facts which were represented as showing time to have been of the essence of the contract. Alternatively they represented that, all things considered, it would be inequitable to enforce performance of the contract. They made no claim to having tendered either Robinson or appellant a deed or any other of the closing papers, and it is undisputed that they in fact made no such tender at any time.

Touching the plea of mutual mistake, the trial judge found as a fact that the contracting parties at the time of contracting were all of "the belief that the provision as to special warranty would not be regarded by Stewart as a basis for refusal to issue title policy." We add that it appears to have been a Stewart policy—rarely departed from—to insure only titles last conveyed by general-warranty deeds.

For what it is worth in connection with appellees' claim that time was of the essence of the contract, we also include the following finding by the trial judge: "The parties at the time of making of the contract were of the intent that the same should be consummated within not more than ten days after sixty days from the date of the making of the contract."

The ancillary legal conclusions of the trial judge which are complained of are, in substance, that the contract expired under its own terms, but, if not, that it nevertheless would be inequitable in the circumstances to enforce performance of it.

We are of the opinion that the trial court was correct in concluding that the contract expired under its own terms.

Disregarding for the moment such options as it may have granted, the contract was to terminate and all parties were to be "fully released" from it at the expiration of 60 days from its date if, because of defects in the title or objections to it, Stewart should refuse to insure the title. Stewart, it is true, did not expressly refuse during the 60 days to insure the title, but we do not consider an express refusal to have been essential to termination of the contract. Under any reasonable interpretation of the contract, its various parts considered together, it was the intention of the parties that appellees were to have 60 days from the date of the contract within which to get Stewart to commit itself to insure the title, and that the contract should terminate if appellees had been unable within that time to secure Stewart's commitment. The parties only bound themselves to await Stewart's decision for a period of 60 days. Appellees having been unable during that time to get Stewart to commit itself to insure the title, what may be termed the primary contract of sale terminated under its express provisions.

It may be argued, of course, that, there having been no outright refusal by Stewart within the 60 days but only Stewart's failure to express itself one way or the other, the parties were at liberty to waive the time element and did so. A sufficient answer lies in the fact that, by Loomis' letter of October 23 to Stewart, a copy of which was sent to Robinson, appellees sufficiently notified both Stewart and Robinson that they, the appellees, would not continue to waive the time element or the terms of the contract beyond 3:00 p. m. of October 24, 1957. Assuming, then, that the primary contract remained in effect until 3:00 p. m. of October 24, we are of the opinion that it terminated at that time.

Upon termination of the primary contract of sale, it was altogether optional with the purchaser as to whether he would waive the insurance and accept title without it. If he wished to exercise the option,

it was necessary that he do so by making his acceptance known to appellees within at least a reasonable time. This was a condition precedent to the option's ripening into a contract of sale. The trial court has both found as a fact and concluded as a matter of law that neither Robinson nor appellant exercised the option.

While we have expressed the opinion that, to the extent to which it initially bound all parties, the contract terminated not later than October 24, 1957, a different disposition of the case would not be necessary if the contract were treated as having remained in force until Stewart advised Robinson and appellant that it would not insure the title following conveyance by special-warranty deed. A timely exercise or acceptance by the purchaser of his option to accept title without insurance would have been no less necessary in the one instance than in the other. Moreover, in order to uphold the judgment, it is not necessary that we hold that any of Robinson's or appellant's acts were too long delayed after the primary contract ended. Since, as the trial court found, Robinson's letter to Loomis on November 19, 1957, was not intended as a waiver of the insurance or as an expression of the purchaser's readiness to accept title without the insurance, it should be likened to a counter-offer and construed as notice that the purchaser was rejecting his option rights. "It is well settled that an acceptance of an option must strictly comply with the option contract and an attempted acceptance which modifies any of its terms is no acceptance." Lambert v. Taylor Telephone Co-operative, Tex.Civ.App., 276 S.W.2d 929, 932. Also, finality should attach to the letter. Appellees having already given notice that they considered the contract ended, the time for equivocation and bargaining was past.

If we should be in error in the foregoing conclusions, we are nevertheless of the opinion that the judgment of the trial court should not be disturbed. All of the facts and circumstances considered, including some enumerated by the trial judge but not set out in this opinion, we are not disposed to say that the trial court abused its discretion in concluding that it would be inequitable to decree specific performance of the contract. See 38 Tex.Jur. 423, Specific Performance, Section 10.

The judgment of the trial court is accordingly affirmed.