Callle Walker ALEXANDER, Appellant,

v.

Hugh D. MURRAY, Appellee.

No. 4487.

Court of Civil Appeals of Texas.

Waco.

June 30, 1966.

Rehearing Denied July 21, 1966.

Hassell & Riley, J. W. Hassell, Jr., Dallas, for appellant.

Jones, Barnes, Watkins & Gay, W. Newton Barnes, Dallas, for appellee.

## OPINION

WILSON, Justice.

This action, instituted by the vendor in a contract for sale of realty as one in trespass to try title, was tried before a jury as a suit for specific performance on purchaser's cross-action. Judgment was rendered as prayed for by the latter. We affirm.

The contract of sale is on a printed form supplied by a title insurance company, and its vague provisions give rise to the controversy. It provided that appellant sold and agreed to convey to appellee-purchaser a described city lot, a portion of the purchase price being deposited with the title company in escrow, and the balance being payable "on closing." It recited that appellant-vendor "agrees to furnish a policy of title insurance" on said property. The contract is silent as to the terms of the policy. It provided the property should "be conveyed by general warranty deed by seller, free and clear of any and all encumbrances, except those herein named," (none being named).

"In the event of the unwillingness of said company to issue its policy of title insurance after 15 days from date hereof," it was agreed, "the purchase money hereby receipted for shall be returned to the purchaser," whereupon the contract should "be cancelled and declared null and void." It was also agreed: "In the event of the failure or refusal of the purchaser to complete this contract within five days after said company has indicated its willingness to issue said policy, then the seller shall have the right to pursue his remedy, either for damages or specific performance as he may elect. In the event of the failure of purchaser to complete this contract, the seller

shall have the right to retain said cash deposit as a part of his damages for the breach of his contract."

A further section stated that the willingness of the title company "to issue a policy of title insurance shall be conclusive evidence of the marketability of title." The contract was signed by the parties December 13, 1963.

In December, between the 20th and 30th, the purchaser was notified by the title company it was "ready to issue its title policy". He asked that closing be deferred, however, until a survey was obtained, and upon being informed the contract did not require vendor to provide for it, he agreed to furnish it himself. This, and three other surveys revealed that a lawn sprinkler system on one side, and a wooden fence and a brick wall on the other encroached upon the tract described in the contract. Attempts ensued by appellee-purchaser to have these encroachments removed by the adjoining owners. He obtained agreement for removal of the sprinkler system, but the owner of the fence and wall did not readily consent to clear the tract.

The final survey was completed April 3. On April 9 the real estate broker representing appellant-vendor notified appellee he would have "to either get on or off". Appellee protested he was attempting to clear the encroachments as fast as possible, but the broker replied, "You will have to close it now, or I intend to sell it." The broker testified appellee then answered, "Go ahead and sell it." Appellee testified he had then answered, "If you have to sell it, go ahead, but I am not through and I want this lot." There is evidence that the agent thereupon obtained another buyer, but the title company as escrow agent would not release the earnest money deposit or proceed with a new contract without a release from appellee. On Monday, April 13 a release and the earnest money were tendered to appellee. He refused to execute the release or accept the money. He testified the broker then told him he must "go by the title company and close the deal before five o'clock or he would sell it to someone else;" and that he offered to close the transaction within that time, but appellant refused to convey.

The jury returned negative answers to issues inquiring whether the parties mutually agreed to rescind the contract on April 9, and whether appellee-purchaser "failed and refused to perform the contract in question within a reasonable time."

The evidence shows that any policy which the title company proposed, or was willing to issue would have provided that its title guaranty was "subject to any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or any overlapping of improvements which a correct survey would show".

Appellant contends her motion for instructed verdict should have been sustained on the grounds, (1) the title insurance company was "unwilling to issue its policy", and the contract then "was at an end"; (2) that since the contract provided that refusal of the purchaser to complete the contract within five days after the title company indicated its willingness to issue the policy "would authorize seller to retain the cash deposit", purchaser's rights had ended, seller had the right of unilateral rescission, and seller was not bound to extend time for performance; (3) that since seller had no duty to obtain removal of encroachments, and purchaser had no duty "to accept the property with such encroachments," the contract terminated; (4) there was no legal basis for applying a "reasonable time" standard.

▮ Appellant's antagonistic premises that the title company was both willing, and unwilling to issue a policy are reconciled by the undisputed evidence and appellant's admission in brief and argument that the company was willing to issue a title policy in December. The policy it was willing to issue, however, was not such as the contract of sale required. It was a qualified and restricted policy not within the contempla-

tion of the parties under the terms of their agreement. Suiter v. Gregory, Tex.Civ. App., 279 S.W.2d 909, 912. Points predicated on the willingness or unwillingness of the title company to issue a policy are therefore untenable.

 The contract of sale required appellant to convey free and clear of all encumbrances. We are not required to decide whether the encroachments constituted encumbrances, (see Uszenski v. McNabb, Tex. Civ.App., 225 S.W.2d 210, 212, writ ref.; 47 A.L.R.2d 331)—although appellant's points and argument impliedly admit they are such—for appellee-purchaser had the right to ignore or waive this requirement, which was for his benefit. Lieber v. Nicholson, Tex.Com.App., 206 S.W. 512, 513; Leonard v. King, Tex.Civ.App., 164 S.W. 1110; 58 Tex.Jur.2d, Vendor and Purchaser, Sec. 155, p. 366; Sec. 173, p. 388. Appellant may not rescind because of her own default.

The time limit for purchaser's performance under the terms of the contract never did arrive. Time is not generally of the essence of a contract for sale and purchase of real estate, as distinguished from option contracts. Johnson v. Portwood, 89 Tex. 235, 34 S.W. 596, 598; Gala Homes, Inc. v. Fritz, Tex.Civ.App., 393 S.W.2d 409, 411, writ ref., n. r. e., and cases cited, 412.

In such a case as this, the purchaser had a reasonable time within which to perform. Copeland v. Bennett, Tex.Civ. App., 243 S.W.2d 264; Longinotti v. Mc-Shane, Tex.Civ.App., 184 S.W. 598, writ ref.; Clark v. Wilson, Tex.Civ.App., 91 S.W. 627; Cunyus v. Hooks Lumber Co., 20 Tex.Civ.App. 290, 48 S.W. 1106; Bush v. Merrill, Tex.Civ.App., 206 S.W. 834. See Creson v. Christie, Tex.Civ.App., 328 S.W.2d 772, writ ref., n. r. e. The jury finding on this issue is not attacked.

The second contention enumerated rests upon a misinterpretation of the contract language; the condition upon which seller was authorized to retain the cash deposit was that purchaser "fail to consummate this contract."

Appellant's final point complaining of refusal of two requested issues is covered by our holding above, and the fact that the inquiry in one of the requested issues was adequately submitted. All points are overruled.

Affirmed.