**HOUSTON OSTEOPATHIC HOSPITAL, Appellant,**

v.

**Irwin M. MEISLER et al., Appellees.**

**No. 226.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

April 23, 1969.

Rehearing Denied May 21, 1969.

Sam Dawkins, Jr., Eastham & Meyer, Houston, for appellant.

Ralph Balasco, Gordon J. Kroll, Eddington, Kroll, Friloux & Smith, Ellis F. Morris, Frank B. Davis, Andrews, Kurth, Campbell & Jones, Houston, for appellees.

TUNKS, Chief Justice.

The appellant, Houston Osteopathic Hospital, is a non-profit corporation organized under the laws of the State of Texas. The appellees are Irwin M. Meisler, John Heisler, Don D. Mitchell and Herbert A. Meisler who, at the times material to the transactions here involved, were members of a partnership doing business as Southeastern Property Company.

The transactions which are the subject matter of this litigation relate to a written contract executed on November 11, 1963. That contract involved two tracts of realty. One tract was situated on Holmes Road in Houston, Texas. Such property will hereafter be referred to as "the Holmes Road property." That property was owned by the appellees and on it was a hospital known as Gulfway General Hospital. The other tract of property was owned by appellant and was located on Montrose Boulevard in Houston. Such property will hereafter be called "the Montrose property." It was the site of a hospital known as Houston Osteopathic Hospital.

By the terms of the November 11, 1963 agreement, the appellees agreed to sell and the appellant agreed to buy the Holmes Road property together with the fixtures and equipment of Gulfway General Hospital for $1,000,000. That consideration was to be paid by the appellant's assumption of debts owed by the appellees in the approximate amount of $685,000, which debts were secured by liens on the property, and by the execution of a promissory note in the approximate amount of $315,000 bearing interest at the rate of 6%, payable on or before two years from its date. The appellant's note was to be secured by a deed of trust lien on the Montrose property. The contract provided that the transactions involved should be closed and possession of the Holmes Road property delivered on or before December 1, 1963. On November 25, 1963, the transaction was closed by the execution and delivery of the various instruments required, including appellant's note and the deed of trust securing it.

The language of the contract at paragraph 3 provided an alternate method for the payment of the note executed by the appellant as part of the purchase price of the Holmes Road property. The language of that paragraph is:

"In the event that Houston Osteopathic Hospital is successful in refinancing the property to be acquired by it, and thereby secures the release of Southeastern Property Company, and each and all of its partners from any and all of the $685,430.82 indebtedness prior to the expiration of two years from the date of this transaction, Southeastern Property Company will accept the property above described and secured by the $314,569.18 note above described in full payment and satisfaction of said note upon delivery to it of a duly executed general warranty deed and policy of title insurance showing no encumbrances from Houston Osteopathic Hospital."

Before October, 1965, some of the debts assumed by the appellant as part payment of the Holmes Road property had been paid. There remained unpaid a debt of about $400,000 owed to Gibralter Savings & Loan Association and a debt of about $180,000 owed to C.I.T. Corporation. About the first of October the appellant began to investigate the possibility of refinancing those two debts so as to procure

the release of appellees and put appellant in position to discharge its $315,000 note by transferring the Montrose property to appellees. Tentative arrangements were made with University Savings & Loan Association for a loan of $600,000. On November 10, 1965, the Executive Committee of the Board of Directors of appellant passed a resolution authorizing two of its officers to proceed with the refinancing and the transfer of the Montrose property. The resolution recited that the following day, November 11th, was the final day of the two-year period allowed for the refinancing of the assumed debts and the transfer of the Montrose property in discharge of the $315,000 note.

On November 11th, a formal commitment for the loan from University Savings & Loan Association was made. Also on that date the appellant's president delivered to Capital Title Company (hereinafter called "the title company") an executed deed conveying the Montrose property to appellees and requested the issuance of a title guaranty policy. The appellant's president also delivered to the title company appellant's check payable to appellees for the amount of the accrued interest on the note. The title company opened two guaranty files, one relating to the owner's policy to be issued to appellees and another relating to the lender's policy to be issued to University Savings & Loan Association, whose loan was to be secured by a lien on the Holmes Road property.

Before November, 1965, the appellees had assigned the appellant's $315,000 note and the lien securing it to the Southern National Bank in Houston as security for their $200,000 note payaable to that bank. The note to the bank was still unpaid and the assignment still effective as of November, 1965. On November 11th, appellant's attorney posted letters by certified mail to Southern National Bank and each of the appellees reciting that the refinancing had been concluded, that the executed deed had been delivered to the title company, that the title company had been instructed to deliver to them the deed upon their delivery to the title company of the $315,000 note marked "paid" and that a separate check had been delivered to the title company to cover the accrued interest on the note. A copy of that letter was hand-delivered to the appellee, Irwin M. Meisler, at his home on November 11. The mailed copies were delivered on the 12th. Neither the bank nor the appellees had selected the title company as their agent for acceptance of delivery of the deed and it is clear that the title company was, at all material times, the representative of the appellant.

When the appellant, on November 11th, delivered the deed to the title company and requested the issuance of a title policy, it did not furnish to the title company a copy of the 1963 contract. It did not notify the title company of any deadline date for the closing of the transaction. It did not request that the title company issue a policy containing any special provisions, and, according to the testimony of the title company president, he assumed that he was to provide a "plain vanilla" policy. The title company president testified that he did not know of any deadline date, but knew that there was some urgency in that "time was of the essence."

In the course of the title examination the title company found that the city had filed suit against appellant to recover delinquent taxes allegedly due on certain personal property in Gulfway General Hospital for the years 1962 and 1963. The amount of taxes claimed to be delinquent in that suit was about $10,000. The satisfaction of the claim there asserted was required by the title company as a condition to its issuance of the title policy requested by the appellant. The appellant paid to the city the amount alleged to be due for such taxes. The title company returned to appellant the check it had drawn payable to appellee for the amount of the interest on the $315,000 note. The appellant gave to the title company its check payable to the title company for the amount of such interest less the

$10,000 paid to the city, in satisfaction of the delinquent tax claim, to cover incidental expenses. It was the plan that the title company would issue its check to the appellees in payment of the amount of interest on the note, less the amount paid the city by appellant in satisfaction of the tax claim.

The November 11, 1965 letter by appellant's attorney to the Southern National Bank and appellees recited that the refinancing of the debts assumed by appellant had been "concluded." In fact, only the commitment by University Savings & Loan had been made at that date. The execution by appellant of its note to University Savings & Loan was on November 19, 1965. The proceeds of that note, $600,000, were delivered to the title company on November 22, 1965. On that date the title company drew its check to Gibralter Savings & Loan Association and to C.I.T. Corporation in payment of the balance due those two creditors on the debts assumed by appellant. Those checks were paid by the drawee bank on November 26, 1965. The title company was not able to get from those creditors releases of the appellees until after the checks had cleared.

In 1965, the taxes payable on the Montrose property amounted to about $3,000 and were not paid until about the middle of December, 1965. None of the money held by the title company in appellant's account had been earmarked for the payment of those taxes, or any part of them.

The president of the title company testified that on November 23, 1965, he telephoned the appellee, Irwin M. Meisler, and told him the transaction was ready to close and that Mr. Meisler said that he would contact the title company in a day or so. The president of the title company testified that none of the appellees ever came by or got in contact with him. The appellee, Irwin M. Meisler, testified that the title company representative called him on November 22nd. He also testified that he went to the title company the next day, that the representative who had called him was not in, that he was sent to another employee, that he asked to see the deed, the title policy and the closing statement that the employee showed him none of those instruments because "he didn't have everything." He testified that no one from the title company had ever contacted him to tell him that all of the closing papers were ready.

On November 23, 1965, an attorney representing the appellee, Don D. Mitchell, wrote a letter to appellant's attorney stating that the statement in that attorney's letter to the effect that the refinancing of the assumed debts have been "completed" was inaccurate because an inquiry revealed that the C.I.T. Corporation debt had not been paid. He also expressed an opinion that the two-year period during which the appellant had the option to discharge the note by transfer of title to the Montrose property had ended on November 11, 1965, and that the appellees were no longer obliged to accept that property in payment of the note. He expressed a willingness to discuss the matter further. On November 24th, the appellee, Don D. Mitchell, on behalf of himself and the other appellees wrote appellant demanding payment of the note in cash on the following day.

On some date after November, 1965, the appellees' note to Southern National Bank was due and unpaid. The bank instituted proceedings to foreclose the lien on the Montrose property. Appellants filed suit in the district court of Harris County naming Southern National Bank and the appellees defendants. The appellant in that suit asked an adjudication of their right to satisfy the $315,000 note by transfer of the Montrose property and for injunction against the foreclosure of the lien. A temporary injunction was granted. The appellees filed a cross-action seeking recovery on the note. Later the temporary injunction was dissolved and a receiver appointed to sell the Montrose property. It was sold for $202,000. This case was tried before the court. Judgment was rendered that plaintiff take nothing and that cross-plaintiffs recover on the note the difference between its amount and the net proceeds

of the sale of the Montrose property, together with interest and attorney's fees. Appeal was perfected. We affirm the judgment of the trial court.

The trial court filed findings of fact and conclusions of law. It concluded that time was of the essence in the performance of the November 11, 1963 contract. The appellant has not challenged that conclusion. The court also concluded that the two-year period during which the Houston Osteopathic Hospital had the option of satisfying its note by the transfer of the Montrose property ended on November 25, 1965, and that Houston Osteopathic Hospital had failed, in a number of respects, to tender performance by that date. The failures found were: the failure to tender the full amount of the interest which the court found to be due; the failure to tender an unconditional deed to the property (the deed delivered to the title company was subject to restrictions, etc., to the extent that they were in effect and of record); the failure to pay or provide for the payment of the 1965 taxes; the failure to tender a title policy showing no encumbrances; the failure to procure the release of appellees from the debts owed to Gibralter and C.I.T.

The appellant's basic contentions are that appellees' conduct relieved them of the duty of tendering performance and that they did, in fact, tender such performance as required by the 1963 contract. For those reasons, appellant denies liability on the $315,000 note.

■ As to its first position, the appellant says that appellees' assignment to the Southern National Bank of its note and the lien securing it made it impossible for appellant to give a deed and title policy not subject to encumbrances and thereby excused the tender of such deed and policy. It is clearly evident that it was within the contemplation of the parties that the appellant's note and the lien securing it might be negotiated because such note was negotiable in form. The appellees in no

way breached any duty to appellant in negotiating it. Such negotiation and assignment of the lien would have authorized appellant to tender a deed subject to the surrender of the note but was not an excuse from the tender of the deed free from all other encumbrances.

■ Next the appellant contends it was excused from a tender of performance on November 25, 1965, because the appellee, Don D. Mitchell, before that date, refused to accept the Montrose property in payment of the note. This contention is based on the letter written by Mitchell's attorney on November 23rd and by Mitchell's letter of November 24th. The trial court found as a fact and concluded as a matter of law that no act on the part of any other appellees constituted a waiver of the performance required of appellant. Construing the two letters in the light of the existing circumstances we are of the opinion that they are susceptible of the construction placed upon them by the trial court. At the time they were written he appellant's attorney had written a letter reciting that the refinancing had been "concluded." Mitchell's attorney had investigated and learned that the C.I.T. Corporation debt had not been paid. His refusal to accept the tendered deed before the debts were refinanced was justified. It is true that he expressed an "opinion" that the refinancing and the transfer were due on November 11th, but he also expressed a willingness to discuss the matter further. Mitchell's letter written on November 24th demanding payment in cash could well have been upon the assumption that the Gibralter and C.I.T. debts were not to be refinanced. We are obliged to review the evidence in the light most favorable to the trial court's findings of fact. Brown v. Frontier Theatres, Inc., (Tex.Sup.), 369 S.W.2d 299. We hold that there was not only some evidence, but also sufficient evidence, to support the trial court's finding that those letters did not constitute such an anticipatory refusal to accept a deed to the Montrose property, along with releases from

Gibralter and C.I.T., as to excuse appellant from tender of such performance.

■ After the appellant, on November 11, 1965, ordered the title policy, the title company made an examination of title to the Montrose property. A report of such examination was made and reduced to writing. From that report, a copy of which was in evidence, and from the testimony of the title company president, it was shown that the title policy to be issued would have been subject to the rights of the parties in possession and subject to any discrepancies in areas or boundaries. The tender of such a title policy did not constitute the tender of the performance required by the November 11, 1963 contract. That contract called for the issuance of a title policy "showing no encumbrances." The title policy which appellant was prepared to furnish did not comply with that contractual requirement. Suiter v. Gregory, Tex.Civ.App., 279 S.W.2d 909, no writ hist.; Alexander v. Murray, Tex.Civ.App., 405 S.W.2d 217, writ ref., n. r. e.

The trial court also found as a fact "that on November 25, 1965, Houston Osteopathic had not secured the release of Southeastern Property Company and all of its partners from all of the $685,430.82 indebtedness" assumed as part of the consideration for the Holmes Road property. By point of error appellant attacks this finding.

■■ As noted above the title company on November 23, delivered to Gibralter and C.I.T. its checks in the amount of the last of the assumed debts. The creditors did not, however, execute their releases until after those checks had cleared the banks on November 26. In the absence of their agreement to such effect, the delivery of the checks to Gibralter and C.I.T. did not constitute payment of the debts owed to them. Home Ins. Indemnity Co. v. Gutierrez, 409 S.W.2d 450, writ ref., n. r. e. There is no evidence that they agreed unconditionally to accept those checks in payment. In fact, their failure to execute

releases until after the checks had cleared indicates that they did not so agree. It is true, as contended by appellant, that, as between the creditor and the debtor, after the clearance of the checks the *payments* related back to the date the checks were conditionally accepted. Texas Mut. Life Ins. Ass'n. v. Tolbert, 134 Tex. 419, 136 S.W.2d 584. That does not mean, though, that the *releases* of the appellees related back to that date. The appellees were not required to assume on November 25 that they would later be released from the debts. They were not parties to the agreement by which Gibralter and C.I.T. conditionally accepted the checks in payment of their claim. The trial court did not err in finding that appellees had not been released from the debts owed to Gibralter and C.I.T. on November 25, 1965.

■ There is another respect in which appellant failed to tender performance on or before November 25. It did not tender a title policy showing no encumbrances because the title report prepared by the title company shows that its policy would have been subject to unpaid taxes. The 1965 taxes on the Montrose property had not been paid on November 25, 1965. The contract made no provision for proration of those taxes. The appellant, as vendor, was therefore obliged to pay the 1965 taxes. Burris v. Haster, Tex.Civ.App., 191 S.W. 2d 811, writ ref. Though the taxes were not delinquent on November 25 they were due and constituted a lien on the property. By the failure to pay those taxes or to provide money designated for their payment and by the provision in the proposed title policy excluding such taxes, appellant failed to tender performance of its contract. Echols v. Miller, Tex.Civ.App., 218 S.W. 48, no writ hist.

■ We agree with appellant that the trial court erred in its conclusion that the appellant was in default in not having tendered payment of the full amount of the accrued interest on the $315,000 note. It is true that the unconditional evidence

clearly showed that both parties to the contract construed the above quoted paragraph three as requiring the payment of the accrued interest in addition to the transfer of title in the Montrose property and the procuring of the releases from the existing debts. That agreement, however, was that the securing of the releases and the proper transfer of the title along with a title policy was to be accepted "in full payment and satisfaction of said note." That language is unambiguous. The provision for the payment of the interest was a part of the note to be so paid and satisfied. Under those circumstances the fact that the parties construed the language contrary to its plain meaning was immaterial. Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563. The trial court's error in this respect was harmless, however, and did not result in the rendition of a wrong judgment because the failures of the appellees as to the matters discussed above constitued a failure to tender performance within the time required, of its alternative method of discharging its liability under its note. Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.