**HARRIS COUNTY, Texas, Appellant,**

v.

**Matt E. HOWARD, Jr., Appellee.**

**No. 16060.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 19, 1973.

Rehearing Denied May 17, 1973.

Joe Resweber, County Atty., Billy E. Lee, Asst. County Atty. Houston, for appellant.

John W. Mitchell, Baer, Cryan, Keen & Kelly, Mike M. Hale, Houston, for appellee.

PEDEN, Justice.

Harris County appeals from a judgment in favor of Mr. Matt Howard in a suit he brought for payment for architectural services he had rendered. On March 19, 1964 Howard and the County had entered into a written contract covering services he was to render in connection with the design and construction of a detention facility, and he brought this suit on the contract and, alternatively, on quantum meruit.

After a non-jury trial, the trial judge entered judgment in Howard's favor for $43,576.50. He made these findings of fact:

"1. The services for which recovery in this suit is sought are not the subject of an enforceable contract.

"2. The services were requested by Harris County, Texas.

"3. The services were knowingly accepted by Harris County, Texas.

"4. Harris County, Texas, should reasonably have been expected to be charged for such services.

"5. Harris County, Texas, received the benefit of such services.

"6. The charges for such services, in the sum of $43,576.50, were reasonable, customary and proper for like or similar services in Harris County, Texas, on the dates that said services were performed."

He also made this conclusion of law:

"The plaintiff, Matt E. Howard, Jr., is entitled to recover of the Defendant, Harris County, Texas, the sum of $43,576.50."

The appellant complains that the trial court erred in not upholding Article 16 of the contract between Howard and the County as a complete defense by the County.

The pertinent provisions of the contract between the parties are these:

". . .

"Article 2. The owner agrees to pay to the architect as compensation for his services:

"2.1 For his basic services seven (7%) of the project construction cost,

hereinafter referred to as the Basic Rate, the work to be let under a single lump sum contract.

"2.2 For work let on a cost-plus-fee basis, increase the Basic Rate by zero per cent.

"2.3 For work let under separate contracts, increase the Basic Rate by two per cent.

"2.4 For Additional Services defined in Article 4 hereinafter, two times the Direct Personnel Expense as defined in Article 7.1 hereinafter. In computing Direct Personnel Expense principal's time shall be computed at $15.00 per hour and employees' time shall be at their regular rate of pay plus normal benefits.

"2.5 Reimbursable expense as defined in Article 7.2 hereinafter to the amount expended.

"*Article 3. Architect's Basic Services*"

(In this article there is a description of the duties which the architect shall perform as his basic services under the contract.)

"*Article 4. Architect's Additional Services.*

"The following services cause the Architect extra expense. If any of those services are authorized by the Owner they shall be paid for by the Owner as a Multiple of Direct Personnel Expense.

"  .   .   .   .

"4.3. Revising previously approved drawings or specifications to accomplish changes.

"  .   .   .   .

"4.5. Preparing documents for Alternate Bids and Change Orders, or for supplemental work initiated after commencement of the construction phase.

"  .   .   .   .

"*Article 7. Direct & Reimbursable Expense*

"7.1 Direct Personnel Expense includes that of principals and employees engaged on the Project including architects, engineers, designers, job captains, draftsmen, specification writers, typists and Project Representatives, in consultation, research, designing, producing drawing, specifications and other documents pertaining to the Project, and services during construction at the Project site.

"7.2 Reimbursable Expense includes actual expenditures made by the Architect in the interest of the project for the following incidental expenses:

7.2.1 Expense of transportation and living of principals and employees when traveling in connection with the Project; long distance calls and telegrams; reproduction of drawings and specifications, excluding copies for Architect's office use and duplicate sets at each phase for the Owner's review and approval; and fees paid for securing approval of authorities having jurisdiction over the Project.

7.2.2 If authorized in advance by the Owner, the expense of Project Representative, overtime work requiring higher than regular rates, perspectives or models for the Owner's use."

"  .   .   .   .

"*Article 16. Limitation of Owner's Liability for Expenditures.*

"Prior to the execution of this agreement Architect has been advised by Owner, and Architect clearly understands and agrees, such understanding and agreement being of the absolute essence to this contract, that Owner shall have available the total maximum sum of $4,875,000.00 specifically allocated to fully discharge any and all liabilities which may be incurred by Owner in bringing this project to an absolute conclusion, re-

sulting in a complete, fully furnished and equipped and fully usable facility, and that the total of any and all basic construction cost, costs of providing the required furnishings and equipment, all fees and compensation of any sort to the Architects and Consultants, and any and all costs for any and all things or purposes ensuing under or out of this agreement, irrespective of the nature thereof, shall not exceed said specifically allocated sum, notwithstanding any word, statement or thing contained in or inferred from the preceding provisions of this agreement which might in any light by any person be interpreted to the contrary. Architect does further understand and agree, said understanding and agreement also being of the essence to the contract, that the total maximum compensation that said Architect and Jail Consultant may become entitled to hereunder and the total maximum sum that Owner shall become liable to pay to said Architect and Jail Consultant hereunder shall not under any conditions, circumstances or interpretations thereof exceed the sum of $318,925."

Howard submitted an itemized schedule in support of his claim for $43,576.50 for "additional services," showing the number of hours devoted to such services by each employee (and by himself) during each pay period and the rate of pay for each of them.

His position as to the merits of this appeal is that the contract is ambiguous as to the manner and extent to which the parties intended to be bound, but that the evidence shows that the limitations of Article 16 could only apply to the provisions concerning the "Basic Services" which he was to perform. He contends that when the limitation in amount, as stated in Article 16, had been reached and the County thereafter initiated and requested changes from his work (that had already been approved), both parties considered all such changes as being outside the contract.

We review the testimony of the plaintiff, Mr. Howard. He stated that a computation of his fee based on the construction costs and the percentages stated in the contract would show that he should have received six or seven thousand dollars more than the $318,925. maximum fee provided by Art. 16 of the contract. He described the $318,925 limitation as the upset price, and emphasized that it applied only to his basic services under the contract. He is not suing for the $6,000–$7,000 dollars. He wrote that off.

He is suing for services he rendered to Harris County which were not required of him under the contract, and the County has already paid him about $20,000 in excess of the $318,925 maximum fee. A case in point was the County's reimbursement of his expense of $850 per month for seventeen or eighteen months for salary of the project engineer, a Mr. Wells. His employment had been approved in advance by the County. (A copy of a contract with the County dated April 1, 1966 covering hiring and payment of the project engineer was later admitted in evidence.) Another item for which he had been paid was the furnishing of reproducible copies of all the drawings on the project. He had furnished them to the County at the request of the County Engineer and had been reimbursed for his expense of between five and six thousand dollars.

At this point the parties stipulated that the Commissioners Court of Harris County had the power to amend the contract as long as the dollar cost thereof did not exceed the amount provided for by the bonds issued to finance the project.

Also, that after the architectural plans had been accepted by the Commissioners Court, change orders were made directing the general contractor to make certain modifications or additions in the plans, and the general contractor was paid extra sums of money over the amount provided in its contract.

Howard said he billed the County for basic services as the work progressed, basing his billing on a percentage of the maximum fee of $318,925.

Plaintiff introduced in evidence his invoice for printing of plans, binding, postage and travel expense amounting to $5,548.73; it bore the notation "Above amount is not part of basic architectural fee." Payment in the amount of $5,366.43 was received. Howard testified that his billing of these items was done under a provision in the contract and that payment was made without regard to the maximum fee figure, i. e., was in excess of it. Another invoice for similar services in the amount of $2,850.45 was rendered and paid in December, 1965. He described these invoices as bills for services outside the contract.

Meanwhile he was each month rendering bills for partial payments for basic services, and they were being paid.

He said that his bills of $850 for Mr. Wells, the project representative, were paid by the County, that such payments were authorized by the second written document in evidence and were "apparently outside the contract."

Howard described the subject matter of this suit as services performed for the County that were necessary or incidental to the preparation of plans and specifications for additions, deletions and changes in the work to be performed by the general contractor. In some instances he was specifically directed to make such changes by Commissioners Court in a formal meeting; the County Engineer always directed that they be made. Howard introduced in evidence Plaintiff's exhibit No. 7, his invoice dated April 17, 1967, stating

"Fee for ADDITIONAL SERVICES furnished to date in accordance with Articles 4/4.3; 4.5 of the Architect-Owner contract:

AMOUNT DUE. . . . $43,576.50

(Fee computed on basis of attached schedules A, B & C, and pursuant to Articles 2.4 and 7.1)."

He testified that the attached schedules reflected the hours that he and each of his specified employees worked on the changes in the plans. The new plans and specifications requested by the County were used by the Commissioners Court, and the general contractor was paid more than $275,000 in addition to his original contract price for the work done on these changes and additions. Howard said he was assured by individual members of the court and by the County Engineer that he would be paid for this work. He said he had also relied on the fact that the Court had paid all the other bills he had submitted for services performed outside the contract. He said his schedules reflected his out-of-pocket expense, and they were reasonable and customary charges for like work. The charges were for man-hours times cost adjusted for an overhead factor and it is customary in the building trade for such services to be paid for.

We note that the schedules show the hourly rate multiplied by two and reference is there made to "See Article 2.4 and Article 4 of the Agreement Between Owner and Architect."

Howard introduced seventeen change orders, sixteen of which he said were approved by Commissioners Court and the work described in them was ordered done by the general contractor.

He said the total amount he had received from the County for services other than basic services was $19,449.18.

County Engineer Richard P. Doss testified that he didn't remember initiating any changes in the plans for the detention facility. He remembered that at the end of the job Howard requested a payment that was denied because there was a County Attorney's opinion stating he was not entitled to the money under his contract because it exceeded the maximum fee. Such

maximum fees are customarily set in contracts made by Harris County.

Doss testified that when change orders were made by Commissioners Court that caused the general contractor to do additional work, they provided that he should be paid beyond the amount provided in his original contract, but he didn't know of any change orders that provided for Howard to receive compensation in addition to that specified in his original contract.

Mr. Alvin J. Hollas, first assistant to the County Auditor, was the last witness to testify. He stated that these payments were made on construction of the detention facility:

| | |
|---|---|
| H. A. Lott, the general contractor | $3,315,479.87 |
| Southern Steel Co. for jail equipment | 1,249,202.00 |
| Mr. Howard, architect | 314,642.02 |
| Mr. Roy Casey, a jail consultant | 4,564.68 |
| | $4,883,888.57 |

He said he believed the figures stated in Art. 16 of the contract represent estimated costs of the facility.

The $850 per month paid to Wells as project representative were not included in the sum paid to Howard. There were other payments made to Howard that the County Auditor's records do not attribute to the contract.

He recalls that some of the bond funds were left after construction of the detention facility in question, and they were used to remodel the downtown jail.

The parties stipulated that:

1. The services set forth in the billings on which this suit is based were in fact rendered by the plaintiff to the defendant;

2. those services were for the preparation of plans and other work made necessary by the sixteen change orders accepted and approved by Harris County Commissioners Court in construction of the facility;

3. those services were reasonably customary and proper for like services in Harris County when performed;

4. the defendant received the benefit of the services in question, but does not concede that the matters in controversy are the basis for a quantum meruit recovery;

5. the contract is a standard form of the American Institute of Architects, but Articles 14, 15 and 16 were typed into it by the County and do not constitute part of the standard AIA form.

Plaintiff then introduced in evidence 18 pages of certified copies of minutes of Commissioners Court meetings. Two pages concerned approval of Howard's bill to pay the monthly salary of the project representative, two concerned authorization of issuance of $3,000,000 in bonds for construction of the detention facility, two authorized sale of such bonds, one authorized payment of Howard's bill for $42,752.75 for architectural services on the facility to February 1, 1965, and the others were primarily concerned with authorizing changes in the contract with the general contractor because of specific changes in plans for the construction of the detention facility.

The record reflects that Harris County exceeded the Art. 16 maximum fee provision by reimbursing Howard for two items of expense he incurred as provided by Art. 7 (reproduction of drawings and hiring of Project Representative), but declines to exceed the same provision by reimbursing him for expenses he incurred as provided by Articles 4.3 and 4.5. We have noticed that the payments made to Howard to reimburse him for paying the salary of the Project Representative were made pursuant to a second contract between Howard and the County, but the record does not reflect that reimbursement of his expenses in providing copies of drawings was made under any contract other than the first one.

The trial court's findings show that its judgment was based on the plaintiff's

pleading in the alternative that his services which are the subject of this suit were outside the scope of the contract and that he should recover their value under the law of quantum meruit.

The plaintiff did not allege in his petition that the contract was ambiguous, but he argues in his appellate brief that it was. He did not plead fraud, accident or mistake, and he did not seek to reform the contract.

The trial court found that the services in question, on the changes in plans, were not the subject of an enforceable contract. We find neither pleadings nor evidence that the contract was unenforceable; the services performed by the architect as a result of changes in plans were contemplated by the parties and provided for in the contract, and we find no basis for holding that they were not the subject of such contract. We have noted that in Howard's invoice to the County for the services in question he stated that they were furnished *in accordance with* Articles 4/4.3 and 4.5 of *the contract* and that his fee was computed pursuant to Articles 2.4 and 7.1 (emphasis added).

■ Howard contends that the appellant has waived its right to complain of any finding of fact by failing to do so in a point of error. We do not agree with this position, and we did consider appellant's statement in its argument that the trial court's first finding of fact was contrary to the only evidence in the record as to the nature of the services in question. "Simply stated, the Court will pass on both the sufficiency and the merits of the 'point' in the light of the statement and argument thereunder." Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943). See also the commentary following Rule 418, Texas Rules of Civil Procedure.

For reasons already stated, we sustain appellant's position on this matter.

■ It is elementary that if there is no ambiguity, the construction of the writ-ten instrument is a question of law for the court. Where an unambiguous writing has been entered into between the parties, the courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515 (Tex. 1968). Citations omitted.

■ We do not consider the contract ambiguous. The printed AIA form set out the method by which the architect's basic fee was to be computed, and it provided, in Art. 4, that he was to be additionally compensated for his other services, such as work done on revising drawings to accomplish changes and, in Art. 7, for certain reimbursible expense.

However, we think it clear that Howard's compensation for all of his work performed under the provisions of the contract was limited by the provision of Art. 16 that "the total maximum sum that Owner shall become liable to pay to said Architect . . . hereunder shall not under any conditions, circumstances or interpretations thereof exceed the sum of $318,925.00."

■ Having held that the contract is not ambiguous, we do not consider the evidence as to the parties' interpretation of it, i. e., that the County reimbursed Howard when he furnished reproduction of drawings. Halbert v. Green, 156 Tex. 223, 293 S.W.2d 848 (1956); Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563 (1945); Houston Osteopathic Hospital v. Meisler, 441 S.W.2d 636 (Tex.Civ.App. 1969, no writ).

We conclude that under the evidence in this case compensation for the services in question was, as a matter of law, subject to

the limitation in Article 16 of the original contract between the parties. Therefore, there can be no recovery under the doctrine of quantum meruit.

The judgment of the trial court is reversed and rendered.