**OWENS et al. v. JACKSON et ux.**
No. 7519.

Court of Civil Appeals of Texas. Austin.
Jan. 14, 1931.

Rehearing Denied Feb. 4, 1931.

Woodruff & Holloway, of Brownwood, for appellants.

E. B. Coopwood and Nye H. Clark, both of Lockhart, for appellee.

BAUGH, J.

Suit by A. B. Jackson and wife against Sherwood B. Owens for specific performance of a written contract whereby the latter agreed to purchase from the former an oil and gas lease on 20 acres of land in Caldwell county. They sought to recover $4,000 as liquidated damages, and to cancel said lease. From the judgment based upon a directed verdict in favor of the plaintiffs, Owens has appealed.

The contract provided that the Jacksons furnish Owens abstract showing "merchantable title" in them to the 20 acres of land involved; that $4,000 be placed in escrow pending examination of abstract and curing of defects, if any, found in title; that a well be spudded in within 30 days after acceptance of title by Owens, the $4,000 thereupon paid to the Jacksons, and the lease delivered to Owens; that in the event their title be not "merchantable," the contract become null and void, that said money be returned to

Owens and the lease to appellees; but that, in case of refusal by Owens to perform such contract, said money should be paid to the Jacksons as liquidated damages.

Owens' attorneys raised certain objections to said title which were not removed to their satisfaction by the curative instruments furnished by the Jacksons, and Owens declined to perform the contract on the ground that the abstract did not show a merchantable title to the land in appellees. The chief objection related to an outstanding interest in the name of J. C. Strickland, which arose as follows: In 1892, A. Beaverdorf and J. G. Towns owned jointly a 300-acre tract which included the 20 acres in question. The abstract shows a deed from J. G. Towns to W. G. Jackson and J. C. Strickland, of his undivided one-half interest in said lands, dated January 4, 1892. This deed was not filed for record until December, 1917, but was shown to have been in the possession of W. G. Jackson long prior thereto. On January 4, 1893, J. G. Towns executed another deed to the same land conveying same to W. G. Jackson alone. This deed was filed for record March 24, 1902. Appellees acquired title through W. G. Jackson, deceased, but no conveyance was shown in the abstract of the interest of Strickland.

Appellees sought recovery on the grounds that they had shown a "merchantable title" in them; and pleaded a custom in that vicinity, alleged to have been orally agreed to by the agent of Owens, that ex parte affidavits showing limitation titles in owners, based upon adverse possession, were accepted as showing a merchantable title. While the term "merchantable title" is usually applied to personalty and not to real estate, it is clear that the parties to said contract used it in the sense of "marketable title", understood and intended it to be so used, and we shall so consider it here. These terms have frequently been used interchangeably and in the same sense in the decisions as applied to land titles. The portion of appellees' pleadings setting up a custom to pass titles in that community as good upon a showing of limitation title by ex parte affidavits was stricken out upon exception, and appellees cross-assign error thereon.

■■ Marketable title is not dependent upon whether the purchaser, if sued, could successfully defend such title against those suing. If the record of his title as shown by the abstract discloses such outstanding interests in other parties than his vendor, as would reasonably subject him to litigation, or compel him to resort to evidence in parol, not afforded by the record, to defend his title against such outstanding claims, it is not marketable. There is no denial that the record in the instant case disclosed an outstand-

ing interest in J. C. Strickland. But appellees insist that the record clearly discloses that, if Strickland ever had any interest, it was shown to have been barred by limitation. It has been repeatedly held, however, that a limitation title based upon adverse possession is not a marketable title. Greer v. Int. Stock Yards, 43 Tex. Civ. App. 370, 96 S. W. 79 (writ ref.); Cline v. Booty (Tex. Civ. App.) 175 S. W. 1081 (writ ref.); Wakeland v. Robertson (Tex. Civ. App.) 219 S. W. 842; Blomstrom v. Wells (Tex. Civ. App.) 239 S. W. 227; Crenshaw v. True (Tex. Civ. App.) 295 S. W. 632; Tex. Auto Co. v. Arbetter (Tex. Civ. App.) 1 S.W.(2d) 334, 335; Rabinowitz v. Darnall (Tex. Civ. App.) 2 S. W.(2d) 930.

The parties hereto contracted for a merchantable title shown by an abstract. Ex parte affidavits, whether showing title by limitation in the vendor, or denying the execution of a recorded deed, or stating that such deed was recorded through mistake, would not be admissible in evidence in an action to recover the land, and are not recorded evidence of title. Cline v. Booty, supra; Crenshaw v. True, supra. Not only is this true, but in his affidavit, J. G. Towns, grantor in deed to W. G. Jackson and Strickland, denied that he had ever executed such deed; while A. B. Jackson, son of W. G. Jackson, and one of the appellees herein, in his affidavit, recognized the genuineness of said deed, but states that same was held by his father upon a condition, which condition was never fulfilled, and that there was therefore no delivery of such deed; and that he (A. B. Jackson), had same recorded by mistake along with several other unrecorded deeds found by him among his father's papers. Thus possession of the deed by one of the grantees, which deed was subsequently recorded, was recognized by Owens' grantors themselves. Such deed, therefore, in the absence of a showing to the contrary, is presumed to have been delivered at the date of its execution, which was one year before the deed to W. G. Jackson alone, through whom appellees claim. Brown v. Rodgers (Tex. Civ. App.) 248 S. W. 750. And registration raises a presumption of delivery to and acceptance by the grantee. City of San Antonio v. San Antonio Academy (Tex. Civ. App.) 259 S. W. 995. To rebut these presumptions, disclosed by the record title, necessitated resort to parol evidence. And the affidavits offered, themselves inadmissible, raised issues of doubt both as to the execution of such deed and as to its delivery. Clearly such reasonable doubts were raised as to the outstanding record interest of Strickland as would deter a reasonably prudent man from accepting such title as marketable. Under such circumstances specific performance is not available to compel accept-

ance of such title. Nor do we think the fact that the deed to Jackson and Strickland was not recorded until 1917, some 25 years after its execution, is evidence of its invalidity, or that it was fraudulent, especially in the light of the circumstances. The deed to the same land from Towns to Jackson alone, through whom appellees claim, was not recorded for 9 years after its execution. And the affidavit of appellee A. B. Jackson, son of W. G. Jackson, that in examining his father's papers in 1917 he found several unrecorded deeds, if such affidavit be considered as curative of objections to said title, indicated rather a neglect on the part of his father to record such instruments, and, instead of allaying doubts about the matter, tended rather to increase them.

Nor did the abstract show a marketable title in appellees under the provisions of article 5519, R. S. 1925, as amended by Acts of 1927, 40th Leg. p. 369, c. 250 (Vernon's Ann. Civ. St. art. 5519), generally referred to as the 25-year statute of limitation. That statute does provide, among other things, that one in peaceable and adverse possession of land, holding same in good faith under recorded deed for a period of 25 years, "shall be held to have a good and marketable title thereto. * * *" But the general purpose of that statute was not changed. It still remains a limitation statute applicable to actions for the recovery of real estate. The statute as amended expressly so states, requires that the conditions named exist for such 25 years "prior to the filing of such action" by an adverse claimant, and that such party in possession "on proof of the above facts shall be held to have established title by limitation to such real estate regardless of coverture, minority, insanity or other disability in the adverse claimant. * * *"

This statute was, we think, merely an extension and expansion of the limitation statutes as applied to suits to recover lands; and in no wise affected the general well-established rule of decision that a limitation title is not a marketable title. The period of limitation is not the basis of such rule; but the fact that resort to matters aliunde the record must be had to establish such title. The contract herein sought to be specifically enforced made no reference to a limitation title, but provided that a "merchantable title" shown by the abstract be furnished. That is, that the record title be merchantable; and a limitation title does not meet that requirement.

Nor do we find any evidence of a waiver of that requirement. The contract did provide that the attorneys were to have a specified time in which to accept or reject the curative data furnished by appellees seeking to remove the objections raised; and there was

some evidence that they may not have rejected the curative data offered within the time specified; but there is no evidence that they at any time withdrew their objections to the outstanding interest of Strickland or waived the same. On the contrary, this objection was insisted upon throughout all negotiations and was never met, except, as stated, by ex parte proof of limitation title, which was not only not accepted but failed to meet the requirements of the contract.

██ The trial court did not err in striking out upon exception that portion of appellees' pleading alleging that Owens rejected the title because of a decline in the value of said oil lease. The appellees sought to specifically enforce their contract on the ground that they had tendered to Owens a merchantable title. Their right of recovery depended upon that issue. If their title were merchantable, they were entitled to recover. If it were not, then Owens was not required to accept it. What other motives, if any, may have prompted him to refuse to accept same thus became immaterial.

██ By their second cross-assignment of error appellees assert error of the trial court in striking from their pleadings allegations that there was a local custom in that vicinity known to the agent of appellant who negotiated said contract and lease, and with reference to which said contract was made, to the effect that limitation titles were accepted as merchantable titles by oil companies generally; and that ex parte affidavits showing such limitation titles were likewise accepted as curative of such objections. Complaint is also made of the exclusion of evidence tendered to prove such allegations.

We find no error in this. There is no contention that there was any fraud, accident, or mistake in the execution of the contract, nor of any misapprehension of the meaning of the terms. used. The contract is clear and unambiguous. It will be presumed therefore that the contract embodies all of the terms of the agreements between the parties, and that the terms used were used in their usually accepted and understood meaning. Appellees cannot vary those terms by parol. While general custom may be, and usually is, resorted to in construing an ambiguous contract, it may never be shown to contradict or change its meaning expressed in definite terms. Malone v. Dawson, 117 Tex. 377, 5 S.W.(2d) 965, 60 A. L. R. 665; Alexander v. Heidenheimer (Tex. Com. App.) 221 S. W. 942; Texas Ill. Co. v. Gant (Tex. Civ. App.) 251 S. W. 575; Eldora Oil Co. v. Thompson (Tex. Com. App.) 244 S. W. 505; Iowa Canning Co. v. Ainsa Co. (Tex. Civ. App.) 267 S. W. 540; 10 Tex. Jur. 295, and numerous cases there cited.

For the reasons stated the judgment of the trial court is reversed, and judgment here rendered that the district clerk pay over to appellant the $4,000 held by him; that appellant recover from appellees interest on said $4,000 at the rate of 6 per cent. from the 22d day of November, 1928, and costs of suit.

Reversed and rendered.