F. C. GAINES, Jr., Appellant,

v.

A. R. DILLARD, Jr., Appellee.

No. 17741.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 10, 1976.

Rehearing Denied Jan. 14, 1977.

Kilgore & Kilgore, James A. Kilgore and W. Stephen Swayze, Dallas, for appellant.

Sanders, Masters, Watson & Brown, Marvin H. Brown, III, Wichita Falls, Fillmore, Camp & Lee, and H. Dustin Fillmore, Fort Worth, for appellee.

OPINION

PER CURIAM.

The plaintiff, F. C. Gaines, Jr., sued the defendant, A. R. Dillard, Jr., to recover $104,221.65 that Gaines had deposited with Dillard as earnest money under a contract for the sale of a ranch in Clay County, Texas. Gaines was the buyer in the contract and Dillard was the seller. Plaintiff's suit was based on the contention that Dillard, as seller, failed to tender a merchantable title to the lands involved to Gaines, as purchaser, and that for that reason Gaines was entitled to get his earnest money back.

The case was tried non jury. It resulted in the trial court rendering judgment that plaintiff take nothing by his suit. This appeal is brought by the plaintiff from that decree. Findings of fact and conclusions of law were requested by both parties and the trial court adopted as its own the findings of fact and conclusions of law that the defendant had filed in the court papers and requested that the court make.

The plaintiff jointly argues his points of error one through eight, inclusive. We here state the substance of those points.

Point of error No. 1 was that the trial court erred in denying plaintiff a recovery because he became entitled to his earnest money back, since the undisputed evidence

showed that the seller failed to furnish in response to requirements 4 and 5 of plaintiff's title opinion the curative matter there requested which was necessary in order for the seller to comply with the sales contract by which seller was obligated to furnish buyer a merchantable title.

Point No. 2 was: the court erred in making its finding of fact No. 2 stating " 'that within 30 days from the submission of the title opinion to Dillard, he furnished to plaintiff curative matter in connection with requirements 4 and 5 of the opinion' " because there is no evidence to support it and the finding is contrary to the undisputed evidence.

Point No. 3 was: the court erred in basing its judgment on finding of fact No. 2 referred to in point No. 2 because the undisputed evidence shows that the curative matter submitted by Dillard to plaintiff was inadequate to cure the objections contained in paragraphs 4 and 5 of the title opinion and that such curative matter did not render the title merchantable.

Point No. 4 was: the trial court erred in making and filing its finding No. 18 stating that " 'The title data, including abstracts of title and curative matter, submitted by Dillard to Gaines and then examined by Gaines' attorneys, contain no evidence of an avulsive change of the Big Wichita River where the same bounds the subject property,' " because it is undisputed that the title data showed a change, but did not show whether it was the result of avulsion or accretion. Prior to this suit defendant presented no evidence of any kind to plaintiff's lawyer that would show the cause of the change in the river boundary. For that reason the title was not merchantable according to the title evidence submitted.

Point No. 5 was: the court erred in making and filing its findings of fact Nos. 19 and 20, stating (19) " 'that at no time material to this suit has there occurred an avulsive change in the Big Wichita River where the same bounds the subject lands,' " and (20) " 'that any such changes as have occurred in the Big Wichita River where the same bounds the subject lands have been

the result of . . . accretion,' " because those findings are insufficient to support the judgment rendered. Even if the evidence offered during this trial was sufficient to justify the court's finding that the change resulted from accretion instead of from avulsion, there was no competent evidence offered during the trial to show that defense counsel submitted any such evidence to the plaintiff prior to the filing of this suit. In that state of the record the plaintiff's title opinion requirements 4 and 5 remain unsatisfied and the title was not shown to be merchantable.

Point No. 6 was: the court erred in making and filing its findings Nos. 19 and 20 that are quoted in its 5th point for the added reason that a finding in this case by the court that the changes in the river were the result of accretion instead of avulsion would not make the defendant's title merchantable, because the court's findings and judgment based thereon would not be binding on the owners of the opposite side of the river whose title has been affected by the change in the river.

Point No. 7 was: the court erred in making and filing its findings of fact Nos. 34 and 35 reading as follows: " '(34) That Plaintiff failed to perform under the contract of sale,' " and " '(35) That such failure was not due to any unsatisfied title requirement which prevented the defendant's title from being merchantable.' "

Point No. 8 was: the court erred in making and filing its findings of fact Nos. 34 and 35 for the further reason that to the extent such findings involve the facts of this case, the same are contrary to the undisputed evidence.

The undisputed evidence showed that on March 15, 1974 the plaintiff, Gaines, and Jerry Michener contracted in writing with the defendant, Dillard, to buy from Dillard a 3206.82 acre ranch located in Clay County, Texas, known as the Edrington Ranch, for a price of $1,042,216.50. The contracts required the buyers to put up with the seller $104,221.65 as earnest money. Gaines later bought Michener's interest in the contract.

The sales contract contained, among others, the following provisions:

"Seller shall within 30 days from the date hereof deliver to Purchaser abstracts of title complete to date.

"Purchaser shall have 60 days from the date that abstracts are made available in which to examine title to the same and to deliver to Seller title requirements. If title is approved or if there are no title requirements, closing shall be had forthwith. If title requirements are made, Seller shall have 30 days from submission of the title opinion in which to obtain and furnish curative matter. If within such period Seller does not cure said title objections, Seller shall notify Purchaser in writing of his inability or refusal to do so, in which event Purchaser shall have 10 days from receipt of such notice in which either to accept such title as Seller has or reject the title, in which latter event this contract shall terminate and the earnest money shall be refunded, but if title is accepted or title requirements cured, closing shall be had forthwith.

"   .   .   .

"Should Purchaser fail to perform hereunder except for reason of an unsatisfied title requirement which prevents Seller's title from being merchantable, Seller shall retain the earnest money as liquidated damages and not as penalty."

The parties stipulated that the abstracts referred to in the contract were delivered by seller to buyer on April 12, 1974, and that on June 8, 1974, the plaintiff's attorneys, Kilgore & Kilgore, delivered their title opinion to the defendant, Dillard. Paragraphs 4 and 5 of that title opinion and the requirements listed under each are as follows:

"4. The patent to the S. L. Palmer Survey was issued on February 27, 1973, although the patent recites that it was issued pursuant to the application of S. L. Palmer, filed in the General Land Office on December 27, 1881. The field notes contained in the foregoing patent have as the northwest boundary thereof the Big Wichita River as such river is presently situated. However, a comparison of the field notes in the patent and the official land office map for Clay County, dated December 24, indicates that the river has meandered over the years and that its present location is substantially different than it was in 1924, and presumably in 1881 when the land was originally located.

"REQUIREMENT: Since the original field notes filed in 1881 for the S. L. Palmer Survey would control over the field notes contained in the patent, and since there may be a conflict with the John W. Massie Survey to the west, a copy of such field notes should be obtained to determine the actual land conveyed by such patent. Also, a copy of the statement of facts and patent for the John W. Massie Survey should be obtained.

"5. A comparison of the field notes contained in the patents to the F. W. Grasmeyer, C. H. Stearns and S. L. Palmer Surveys (all of which have as their northern or northwest boundaries the east bank of the Big Wichita River) and the lands described in the Contract of Sale indicate that (as discussed in paragraph 4 above) there has been over the years a substantial movement in the position of the Big Wichita River. If such movement was occasioned by the gradual accretion and erosion of the land on the banks of such river caused by the natural flow of the river, all present lands on the east side of the river would accrue to the present owner of the Grasmeyer, Stearns and Palmer Surveys, even though not originally described in the patents. On the other hand, if such change in the river resulted from a sudden movement of the river out of its original banks into a new channel leaving clearly defined lands on the east side of the river which were originally on the west side, such lands between the old river course and the new river course would continue to be owned by the owners of the lands on the west bank of the river, all of which are in the John W. Massie Survey. Thus, the ownership of those lands now on the east side of the river, but not within the lands described in the original surveys of the Grasmeyer, Stearns and Palmer Sur-

veys depends upon a factual determination as to how and why the Big Wichita River moved from its previous location to its present location.

"REQUIREMENT: There should be obtained quitclaim deeds from the present owners of the John W. Massie Survey conveying those lands originally located within the John W. Massie Survey and now situated on the east side of the Big Wichita River. If such cannot be obtained, there should be obtained a final judgment from a court of competent jurisdiction adjudicating title to such lands."

The parties stipulated that plaintiff's title opinion set forth that in the absence of the documents and information required by the title opinion the title to the Edrington Ranch was unmerchantable.

On July 3, 1974, defendant through his attorneys delivered to plaintiff additional documents regarding defendant's title to the Ranch involved. None of those documents were required by the title opinion and we hold that none of them cured the title defect pointed out by plaintiff in paragraph 5 of the title opinion.

On this same date and at the same time defendant's attorneys wrote and delivered a letter to plaintiff's attorneys concerning plaintiff's title opinion. The letter, among other things, contained the following: "While we cannot agree with your statement that title was unmerchantable prior to the furnishing of the enclosed matters, we nonetheless furnish them in the thought that you may find them useful in satisfying any questions, upon reflection, you might have. Accordingly you are advised that we consider title to the ranch to be merchantable and that all title requirements which might affect merchantability are cured by the enclosures.

". . . Please let me hear from you to plan details for closing."

It was undisputed that in the ten day period immediately following July 3, 1974, plaintiff did not communicate to defendant a rejection of the title involved.

On about July 19, 1974, plaintiff and defendant met in Wichita Falls. Plaintiff needed additional time to raise money and defendant's attorney prepared an instrument which stated that defendant gave plaintiff additional time and that plaintiff "accepts title to the lands . . . as merchantable." Plaintiff said he would take the instrument and get his attorney to look at it. The parties never did sign it or agree to its terms.

On August 19, 1974, defendant wrote plaintiff a letter advising him that he owed plaintiff no further obligations under the contract and to send his abstracts back.

On August 29, 1974, plaintiff's attorneys wrote defendant a letter advising that the title defects he had pointed out rendered the title unmerchantable and that he was unwilling to waive such defects and that since defendant was either unable or unwilling to cure them, he demanded a return of his earnest money.

On September 4, 1974, defendant wrote plaintiff advising that he would not return the earnest money and this lawsuit then followed.

### Did the abstracts involved show a merchantable title?

The defendant's witness, Ross H. Corlett, Jr., was a licensed State Land Surveyor and a professional engineer. Corlett surveyed the land involved at the time the defendant, Dillard, acquired such land in 1972. In connection with that survey Corlett had prepared a plat of the land which plat was made a part of the stipulation (Ex. S thereto) that the parties had agreed on and such plat was introduced into evidence during the trial. The parties stipulated that a copy of this plat and survey had been furnished to plaintiff in connection with the proposed sale. The plat and survey contained the calls along the meanders of the river as they were located in 1972. The Big Wichita River, as shown by the plat, formed a part of the northwest boundary of the land involved.

Corlett's plat is as follows:

The field notes contained in the sales contract between the parties are the same as those furnished by Corlett in connection with his 1972 survey and are the same as those reflected by Corlett's plat shown above as Ex. S to the stipulation.

We construe the sales contract involved to require the seller to furnish abstracts of title to the land involved that showed a merchantable title of record.

The following is from Patton on Titles (Second Edition), Sec. 47, starting on page 172: "However, a purchaser's contract is seldom silent as to the character of title which he is to receive. Even when there is no express provision for a record title, the obligation is frequently created by an agreement that the vendor is to furnish an abstract. Under such a contract, merely a marketable title as defined by the equity courts will not suffice; its character as such must appear from the abstract. And, since in this country, an abstract covers only those muniments of title which are of record, such contracts are construed as requiring a marketable title of record."

Cases supporting the text quoted from Patton on Titles are: *Friedrich v. Seligmann*, 22 S.W.2d 749 (Tex.Civ.App., San Antonio, 1929, writ dism.), and *Wright v. Glass*, 174 S.W. 717 (Tex.Civ.App., Texarkana, 1915, no writ hist.).

■ One question for our determination at this point is whether the burden rested on the buyer to show, or upon the seller to negative, that the defects of title pointed out by the buyer were such as were reasonably calculated to render the title unmerchantable.

In cases where the seller is (as was true in this case) required to furnish abstract showing merchantable title, and purchaser is required within a stipulated time to point out the title defects shown in the abstract so furnished, and does so, the burden rests on the seller to cure the claimed defects or else show they are not such as would impair the merchantability of title. But if the purchaser raises objections on defects not disclosed by the abstract, the burden rests

on him to show that those defects are such as impair the merchantability of the title. Holding the law to be as we have just stated it is *Spencer v. Maverick*, 146 S.W.2d 819 (Tex.Civ.App., San Antonio, 1941, no writ hist.).

■ In this case the contract of sale between the parties contained the field notes reflected by Corlett's 1972 survey and plat (Ex. S to the stipulation). An examination of the field notes contained in the patents to the F. W. Grasmeyer, C. H. Stearns, and S. L. Palmer Surveys as contained in the abstracts, and a comparison of them as against the field notes contained in the contract of sale show the defects in title pointed out in Gaines' 4th and 5th objections in his title opinion.

Since the title defects pointed out by the buyer, Gaines, in his title objections numbered 4 and 5 were disclosed by the abstracts that the seller was required by the contract to furnish, we hold that the burden in this case was on the seller, Dillard, to cure the defects or to show that such defects are not such as would render the title unmerchantable. See *Spencer v. Maverick*, supra.

■ The title defects complained of are demonstrated by the plat (Ex. S to the stipulation). The plat shows the location of the river in 1972 when the witness, Corlett, surveyed it. The river forms the northwest boundary of the ranch involved. Corlett testified that he then took the patents and corrected field notes from the F. W. Grasmeyer, C. H. Stearns and S. L. Palmer Surveys and transposed those calls, showing the location of the river at the time those patents were issued, into his plat (Ex. S to the stipulation). The calls last mentioned are represented by the dotted lines on the plat in the area of the river. When the location of the dotted line is compared with the location of the river as it is shown on the plat, it is apparent that there has been substantial movement in the bed of the river that forms the northwest boundary of the ranch involved between the times when the original patents were issued and the present date.

That fact is further corroborated by comparing the location of the river in that area as it is shown on Pl. Ex. 5 with the present location of the river as is shown on Corlett's plat (Ex. S to the stipulation). Plaintiff's Ex. 5 was in evidence. It purports to be a map of Clay County and to be from the General Land Office Records and bears date of December, 1924.

The record indicates that the curative matter required by plaintiff in connection with its objection 4 was furnished by Dillard to plaintiff. But that is not true of the requirements under objection 5 in plaintiff's title opinion. The requirements made by plaintiff in connection with his objection 5 were not furnished. Dillard did furnish certain data to plaintiff but it was legally insufficient to cure the title defects pointed out by plaintiff in its objection 5.

We hold that Dillard did not discharge his burden of showing that his abstracts did show that he had a merchantable title of record to the ranch involved.

As a matter of law the abstracts submitted to Gaines failed to show a merchantable title to the ranch in question.

The following is from *Owens v. Jackson,* 35 S.W.2d 186 (Tex.Civ.App., Austin, 1931, writ dism.): "Marketable title is not dependent upon whether the purchaser, if sued, could successfully defend such title against those suing. If the record of his title as shown by the abstract discloses such outstanding interests in other parties than his vendor, as would reasonably subject him to litigation, or compel him to resort to evidence in parol, not afforded by the record, to defend his title against such outstanding claims, it is not marketable."

In this case the abstracts showed that the location of the river bed at the time the surveys in question were patented is substantially different from where it is presently located and that the parts of the ranch shown on Ex. S to the stipulation as shaded areas was not included in the Grasmeyer, Stearns and Palmer Surveys at the time they were patented. Since the land in the shaded areas was not a part of the named surveys, and since the bed of the river has changed, it appears that the land in the shaded areas was part of the surveys that were located on the northwest or other side of the river (Massie Survey) at the time the patents were issued.

To rebut these facts shown by the record title requires a resort to parol evidence. We are convinced that the defect referred to raises such doubts as to the record title of Dillard to the part of the ranch in question as would deter a reasonably prudent man from accepting such title as marketable. *Owens v. Jackson,* supra.

Texas courts have uniformly held that a limitation title is not a merchantable title.

In discussing the reason for that rule the Court in *Owens v. Jackson,* at page 188, had the following to say: "The period of limitation is not the basis of such rule; but the fact that resort to matters aliunde the record must be had to establish such title. The contract herein sought to be specifically enforced made no reference to a limitation title, but provided that a 'merchantable title' shown by the abstract be furnished. That is, that the record title be merchantable; and a limitation title does not meet that requirement."

We construe the contract involved here to require that the seller would furnish abstracts to plaintiff showing a merchantable title to the ranch of record. In order to establish and determine whether or not the land in the shaded areas of Ex. S to the stipulation got on the northeast side of the river by accretion or by avulsion requires a resort to parol evidence outside of the abstracts.

We hold that where abstracts show that a part of the land in question attached to such land either by accretion or avulsion, without showing how it attached, that such abstracts do not show merchantable title of record to such land.

For the same reasons that a limitation title is not a merchantable title of record, a title to land acquired by accretion does not constitute a merchantable title of record, because in both instances there must

be resort to matters outside the record or abstracts in order to establish such titles. See *Blomstrom v. Wells*, 239 S.W. 227 (Tex. Civ.App., San Antonio, 1922, writ dism.), wherein the Court said at page 230 the following: " 'If the contract provides that the abstract shall show a marketable title, the vendor will not be permitted to show by evidence aliunde that the title is good, nor will the purchaser be required to go outside of the abstract in examining title.' " The Court also said on the same page: "You cannot force a proposed purchaser to accept a title upon a contract to supply a marketable title, when that title has to be supported aliunde the record by parol testimony difficult to assemble in support of the same."

See also on this, *Wright v. Glass*, 174 S.W. 717 (Tex.Civ.App., Texarkana, 1915, no writ hist.).

For the reasons hereinabove indicated we sustain the plaintiff's points of error No. 1, No. 7 and No. 8.

The 7th point of error was that the court erred in making and filing its findings of fact Nos. 34 and 35. By No. 34 the court found that the plaintiff failed to perform under the contract of sale. This fact was undisputed. The court's finding of fact No. 35 was that such failure was not due to any unsatisfied title requirement which prevented defendant's title from being merchantable. In plaintiff's 8th point of error he attacks finding No. 35 as being contrary to the undisputed evidence. We agree and sustain that 8th point of error.

In the case of *Owens v. Jackson*, 35 S.W.2d 186 (Tex.Civ.App., Austin, 1931, writ dism.), the seller was contending that the buyer did not reject the title because of title defects, but that he rejected it because there had been a decline in the value of the property. On this the Court said: "The appellees sought to specifically enforce their contract on the ground that they had tendered to Owens a merchantable title. Their right of recovery depended upon that issue. If their title were merchantable, they were entitled to recover. If it were not, then Owens was not required to accept it. What other motives, if any, may have

prompted him to refuse to accept same thus became immaterial."

■ Defendant makes a similar contention in this case. What the Court said in the *Owens v. Jackson* case reference to that contention is equally applicable here. Defendant had contracted to furnish a merchantable title, but did not do it. For that reason plaintiff was entitled to a refund of his earnest money, and the fact that the price of land had gone down is immaterial.

Plaintiff in his title opinion pointed out the title defect involved and made a requirement which was not satisfied by defendant. He again pointed out to defendant in a letter on August 29, 1974 that defendant had failed and refused to cure the title defects so as to render the title merchantable and demanded a return of the earnest money on the grounds that the title was unmerchantable.

The court's fact finding No. 2 that is complained of in plaintiff's point of error No. 2 is immaterial. The curative matter furnished to plaintiff by defendant was legally insufficient to cure the defect pointed out in ground No. 5 of the plaintiff's title opinion. The undisputed evidence was that the curative matter furnished by Dillard did not render his title merchantable and we sustain the 3rd point of error for that reason.

The trial court's findings of fact Nos. 18, 19 and 20 that are complained of in plaintiff's points of error Nos. 4, 5 and 6, all of which are hereinabove referred to, are immaterial. Such findings are not of facts that make Dillard's title merchantable.

Plaintiff's points of error Nos. 9 through 20, inclusive, relate to defendant's plea of waiver.

In his 9th point of error plaintiff contends that the trial court erred in rendering judgment against him because there is no evidence to support defendant's plea of waiver. In the 17th point of error plaintiff contends that the court erred in making its finding of fact No. 7 to the effect that plaintiff knowingly gave up his right to reject title to such property within ten days

from July 3, 1974, because there is no evidence to support such finding. The 20th point of error was that the trial court erred in basing its judgment on findings of fact Nos. 4, 5, 6 and 7.

We sustain each of those points of error.

■ Defendant pleaded that plaintiff's failure to reject title to the property within ten days after being notified of defendant's failure or refusal to cure the title defects constituted a waiver of his right to recover earnest money.

Defendant's contention is that by virtue of the provisions of the sales contract plaintiff waived his right to have the earnest money returned to him by failing to expressly reject defendant's title within the ten day period immediately following July 3, 1974 (the date when defendant notified plaintiff of his inability or refusal to cure the title defects).

We disagree with that contention. When the contract involved is properly construed the plaintiff did not, by its terms, lose or waive his right to a refund of his earnest money by remaining silent for a period of more than ten days immediately following July 3, 1974.

The applicable provisions of the contract are set out earlier in this opinion.

Here the defendant furnished the abstract within the required thirty days. The buyer furnished defendant his title opinion making title requirements within the sixty allotted days. The seller did not cure the title defects pointed out in the title opinion. He did within thirty days after receiving the title opinion notify the buyer of his inability or refusal to cure the title defects. This notification was given on July 3, 1974.

The contract provided in substance that: when seller's inability or refusal to cure the title defects was communicated to the buyer, the buyer shall have ten days thereafter in which to either accept such title as seller had or reject the title; that if buyer then rejected the title the contract terminated and buyer was entitled to his earnest money back; that if the buyer accepts the title or if the title defects are cured the contract

remained in force and the deal will be closed.

The contract requirement for a merchantable title was for the buyer's benefit. The effect of the provisions giving the buyer an additional ten days, after the seller had notified the buyer of his inability or refusal to cure the title objections, in which to accept such title as the buyer had, even though it was not merchantable, was to give the buyer the option during that additional ten day period of accepting seller's title even though it was not merchantable. See *Creson v. Christie*, 328 S.W.2d 772 (Tex. Civ.App., Beaumont, 1959, ref., n. r. e.), and *Alexander v. Murray*, 405 S.W.2d 217 (Tex. Civ.App., Waco, 1966, ref., n. r. e.). This provision also gave the buyer the right to immediately terminate the contract and get his earnest money back by rejecting the title.

It will be noted that the contract provided that if the buyer accepted such title as the seller had the contract shall remain in effect and the deal shall be closed. It provided that if buyer rejected the title during the ten days the contract would be terminated and the earnest money refunded. In this case the buyer neither accepted nor rejected the title within the ten day period. The buyer remained silent during that period and did nothing. The contract did not expressly provide for that contingency, but it did contain the following provision: "Should Purchaser fail to perform hereunder except for reason of an unsatisfied title requirement which prevents Seller's title from being merchantable, Seller shall retain the earnest money as liquidated damages and not as penalty."

We hold that under the contract involved the plaintiff, buyer, did not waive his right to a return of his earnest money under the facts of this case. When the contract is construed as a whole, it gave the buyer a right to reject the title and recover his earnest money on the ground that defects in the title existed that rendered the title unmerchantable, even though the title was not expressly rejected until after the ten days expired.

We overrule plaintiff's 10th and 11th points of error complaining of the court's 4th and 5th findings of fact. The 4th finding was that defendant within such 30 day period notified the plaintiff of defendant's inability or refusal to cure the remaining title defects, and the 5th was that the plaintiff understood defendant's July 3, 1974 letter to be notice to that effect. We are convinced the evidence supported those findings but hold that they did not entitle defendant to the judgment appealed from.

Plaintiff contends in his 12th and 13th points of error that the court erred in making its finding of fact No. 6 to the effect that plaintiff did not reject title to the property within ten days from the receipt of such notice. We overrule the 12th point of error because the undisputed evidence shows that the plaintiff remained silent during that period. We do hold that the contract in question did not impose an obligation on the buyer to reject the title within the ten day period just following July 3, 1974, and that the contract in question did not make it a condition precedent to plaintiff's right to recover his earnest money, that he reject the title within the ten day period. Finding of fact No. 6 did not entitle defendant to the judgment he was awarded.

The 14th point of error is that the trial court erred in making finding No. 9 to the effect that within the ten day period no such notification was given defendant that requirement No. 5 remained unsatisfied. We overrule that point but deem the finding to be immaterial because the undisputed evidence showed that requirement No. 5 had been made in the title opinion and that the curative matter required had not been furnished by defendant.

The 15th point of error is that the court erred in making its finding of fact No. 10 stating " 'that within the 10-day period from Defendant's notification . . . of his . . . refusal to cure title objections, the only advice from Plaintiff . . . regarding unsatisfied title requirements concerned the sufficiency of the Statement of Facts furnished by the General Land office.' " We overrule the point of error. The evidence supports the finding, but we deem the finding to be immaterial and insufficient to support the judgment.

The 16th point of error is that the court erred in making its finding of fact No. 11, stating " 'that Plaintiff communicated to Defendant his rejection of title for the first time in his August 29, 1974 letter.' " We overrule the point, but hold that finding No. 11 is insufficient to entitle defendant to the judgment he was awarded in this case.

We overrule plaintiff's 18th point of error because we are convinced that defendant's letter of July 3, 1974, did notify plaintiff that defendant was refusing to take any further steps toward curing title.

Plaintiff's 19th point of error was that the court erred in basing its judgment on finding of fact No. 7, stating " 'that Plaintiff knowingly gave up his right to reject title to such property within ten days from July 3, 1974,' " because there was no evidence to support such finding. We sustain that point. We have hereinabove discussed our reasons.

In plaintiff's 21st point of error he contends that the trial court erred in rendering the judgment against him on the grounds of estoppel because there is no evidence to support the defendant's plea of estoppel.

We sustain that point of error. The doctrine of estoppel is not applicable to the undisputed facts of this case.

The court's findings of fact Nos. 1, 12, 13, 14, 15, 16 and 17 are the findings that are applicable to the estoppel theory of the case.

It was undisputed that the plaintiff had submitted to defendant his title opinion pointing out in paragraph 5 the title defect complained of. Thereafter defendant advised plaintiff that he would furnish no further curative matter because he considered his title to be merchantable. This latter advice was given to plaintiff on July 3, 1974. For more than ten days after that date plaintiff remained silent. After the ten days had lapsed plaintiff and defendant

talked in defendant's office. Plaintiff made it known that he could use some more time in order to raise all sums of money he needed to close. At that time he made no mention of the title requirement No. 5. On this occasion defendant submitted to plaintiff for signature a written agreement that he had previously had his attorney prepare, which proposed agreement provided that defendant would give plaintiff some additional time in which to close the deal and in consideration for the extension the plaintiff would accept the title as it was, thus waiving the title requirement that he had previously made. At that time plaintiff refused to sign or make such an agreement saying he would take the proposed written agreement and get his attorney to check over it. The plaintiff did not communicate with defendant from that time until August 19, 1974. On August 19, 1974, the defendant wrote plaintiff and advised him that he had no further obligation to plaintiff under the sales contract involved. On August 29, 1974 plaintiff replied and told defendant that he was disturbed by his letter, that he was unwilling to waive the title requirements he had made in his title opinion and that he asserted his right to have a refund of his earnest money.

Those facts were undisputed. As a matter of law these facts did not estop plaintiff on his claim for return of his earnest money.

The court's finding of fact No. 1 stated that after March 15, 1974, the market value of the property substantially declined.

Plaintiff contends in his point of error No. 21 that there is no evidence to support this finding of fact No. 1. We overrule that point as there was evidence to that effect. We also hold that the finding is not against the overwhelming weight of the evidence as is contended in point of error No. 22.

Plaintiff's 24th point of error is that the court erred in making its finding of fact No. 12, stating " 'that after the expiration of such 10-day period, Plaintiff knowingly led Defendant to believe that the title to such property was acceptable to Plaintiff' "

because there is no evidence to support such finding. We sustain that point of error.

We also sustain plaintiff's 26th, 28th, 31st, 33rd and 35th points of error wherein he contends that there was no evidence to support the court's findings of fact Nos. 13, 14, 15, 16 and 17.

Cases supporting our decision that defendant was not entitled to judgment on the grounds of estoppel are: *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952); *Astro Sign Company v. Sullivan*, 518 S.W.2d 420 (Tex.Civ.App., Corpus Christi, 1974, ref., n. r. e.); *Echols v. Bloom*, 485 S.W.2d 798 (Tex.Civ.App., Houston 14th Dist., 1972, ref., n. r. e.); *Farley v. Clark Equipment Company*, 484 S.W.2d 142 (Tex.Civ.App., Amarillo, 1972, ref., n. r. e.); *Newton v. Town of Highland Park*, 282 S.W.2d 266 (Tex.Civ.App., Dallas, 1955, ref., n. r. e.); and *Herbert v. Denman*, 44 S.W.2d 441 (Tex.Civ.App., Texarkana, 1931, writ ref.); and see 22 Tex.Jur.2d 668, Estoppel, Sec. 8.

We are convinced that as a matter of law the plaintiff was entitled to a refund of his earnest money under the facts of this case.

The trial court's judgment is reversed and judgment is here rendered that plaintiff recover from the defendant the sum of $104,221.65 with interest thereon at the legal rate from August 29, 1974.